IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TATYANA EVGENIEVNA DREVALEVA,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, and ROBERT WILKIE, Secretary, United States Department of Veterans Affairs,

    Defendants.

No. C 18-03748 WHA

**ORDER RE MOTIONS TO STAY, CERTIFY, SEVER, RECONSIDER, AND FOR LEAVE TO AMEND**

## INTRODUCTION

In this employment discrimination action, *pro se* plaintiff moves (1) for leave to amend her complaint; (2) to stay three claims for relief; (3) for reconsideration of her motion for preliminary injunction; (4) to sever one of her claims; and (5) to certify this action to our court of appeals or to appoint a master. For the reasons stated herein, the motions for leave to amend the complaint and for reconsideration are **DENIED**. The motions to stay, sever, and certify or appoint a master are **DENIED AS MOOT**.

## STATEMENT

The alleged facts giving rise to the instant action, which remain unchanged in the proposed amended complaint, are detailed in a prior order (Dkt. No. 69 at 1–3). Briefly, in April 2017, defendants United States Department of Veterans Affairs and Robert Wilkie, Secretary of United States Department of Veterans Affairs, hired *pro se* plaintiff Tatyana E.

1  Drevaleva as a medical instrument technician at the Raymond G. Murphy Veterans Affairs
2  Medical Center in Albuquerque (Dkt. No. 86-2 ¶ 2).
3     In May 2017, plaintiff spoke with her supervisor about requesting leave without pay
4  to travel to Russia to undergo *in vitro* fertilization.  Plaintiff informed her supervisor that as a
5  citizen of Russia, she was entitled a free IVF attempt.  She detailed the history of her attempts
6  to conceive a child, explaining that she had been married twice, had sexual relationships with
7  men, and underwent approximately eight intrauterine inseminations at Kaiser Permanente, to no
8  avail.  Plaintiff also disclosed that she had a frozen embryo in Russia, a result of three IVF
9  attempts that spanned from January 2014–July 2016.  Her plan was to travel to Russia, undergo
10 a fourth IVF attempt, freeze the embryo if the IVF attempt was successful, and return to work in
11 order to earn money to hire a surrogate mother in Russia.  Plaintiff's supervisor informed her
12 that she did not meet the minimum duration of employment (twelve months) required for
13 FMLA, but described the procedure for requesting unpaid leave outside of FMLA (*id.* ¶¶ 5–6,
14 8–11; Dkt. No. 86-18 at 110).
15    On May 17, 2017, plaintiff approached her assistant supervisor with the same request.
16 Plaintiff's assistant supervisor advised plaintiff of the proper procedure for requesting unpaid
17 leave but allegedly said "If you need to go — go!"  Allegedly believing she had verbal
18 permission, plaintiff filled out the form without any medical documentation, slipped it under her
19 assistant supervisor's door, and left for Russia the following evening.  While in Russia, plaintiff
20 emailed her supervisors several times without response.  On July 3, 2017, plaintiff received
21 an email from her supervisor indicating that plaintiff had been terminated on June 30, 2017.
22 The termination letter was also mailed to plaintiff's home address in New Mexico.  Plaintiff
23 was not able to complete a successful IVF attempt and she returned to the United States in
24 August 2017.  During a mediation session with her supervisor in September 2017, plaintiff
25 learned that her request for unpaid leave had been denied and her termination had been a result
26 of taking leave without permission (Dkt. Nos. 86-2 ¶¶ 13–14, 17–18, 20–21, 26–28; 86-7 at 4).
27 Following unsuccessful mediation through the Office of Resolution, plaintiff commenced this
28 action (Dkt. No. 86, Exhs. 8 at 8; 14–15; 19).

**United States District Court**
For the Northern District of California

2

On June 25, 2018, plaintiff filed a complaint that advanced three sets of claims: (1) discrimination claims; (2) tort claims; and (3) constitutional claims. Her discrimination claims included: (a) gender and pregnancy discrimination under Title VII of the Civil Rights Act; (b) disability discrimination and failure to accommodate under the Rehabilitation Act of 1973; and (c) age discrimination under the Age Discrimination in Employment Act. Plaintiff also moved for preliminary injunction, seeking an order reinstating her to her previous position or "a similar full time job with benefits" (Dkt. No. 39 at 4).

On December 3, 2018, an order was issued which, *inter alia*, dismissed the entire suit and denied plaintiff's motion for a preliminary injunction. Plaintiff's tort and constitutional claims were dismissed with prejudice because Title VII provided the exclusive remedy for these claims (Dkt. No. 69 at 7–8). The order detailed the legal standards for each of plaintiff's discrimination claims and explained why plaintiff's complaint insufficient. That order also provided plaintiff the opportunity to seek leave to file an amended complaint, which she did in a timely manner (*id.* at 4–6, 9).

Throughout the course of these proceedings, plaintiff made five trips to our court of appeals (*see* Dkt. Nos. 58, 70, 72, 85, 105). Each of plaintiff's appeals resulted in either a denial or dismissal (Dkt. Nos. 90, 114–115, 136). Plaintiff petitioned for a writ of certiorari before the United States Supreme Court twice (Dkt. Nos. 60, 132). Both petitions and plaintiff's subsequent petition for rehearing were denied (Dkt. Nos. 133, 145, 152).

A stay was instituted due to the federal government shutdown, pending restoration of funds to the Department of Justice (Dkt. No. 107). During this time, plaintiff filed an affidavit, pursuant to 28 U.S.C. § 144, claiming that the undersigned judge "ha[d] a bias and prejudice towards the Plaintiff and act[ed] in favor of the opposing Party" (Dkt. No. 102). After the stay was lifted, the undersigned judge declined to recuse himself, instead treating the affidavit as a motion to disqualify (Dkt. Nos. 117; 129 at 2). This action was stayed once more, pending resolution of the motion to disqualify (*ibid.*). The motion to disqualify was reassigned to Judge Yvonne Gonzales Rogers, who denied it on the ground that no reasonable question was raised as to the undersigned judge's impartiality (Dkt. No. 138 at 10). In total, these stays

spanned multiple months. Plaintiff then requested that the stay be maintained, pending the United States Supreme Court's decision on one of plaintiff's petitions for a writ of certiorari (Dkt. No. 139). Because of the slim likelihood that the petition would be granted, the stay was lifted (Dkt. No. 142). On April 15, 2019, the petition was denied (Dkt. No. 133).

Now, plaintiff moves for the following: (1) leave to amend her complaint; (2) to stay the tort and constitutional claims; (3) for reconsideration of her motion for preliminary injunction; (4) to sever two of her discrimination claims; and (5) to certify the action to our court of appeals or to appoint a master. This order follows full briefing and oral argument.

## ANALYSIS

### 1. MOTION FOR LEAVE TO AMEND.

Rule 15(a)(2) permits a party to amend its pleading with the court's leave, advising that "[t]he court should freely give leave when justice so requires." In ruling on a motion for leave to amend, courts consider: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Futility alone can justify denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The legal standard for assessing futility on this motion is identical to that of a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*Pro se* pleadings must be liberally construed. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies in the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). A court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

**A.     Discrimination Claims.**

*(1)     Gender and Pregnancy Discrimination.*

Title VII prohibits employers, including the Department of Veterans Affairs, from discriminating against individuals "with respect to . . . compensation, terms, conditions, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act of 1978 ("PDA") amended the term "on the basis of sex" to encompass "pregnancy, childbirth, or related medical conditions." 42 U.S.C §2000e(k). At this stage in the proceedings, plaintiff need not establish a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Plaintiff does, however, need to allege facts that, when taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Though plaintiff need not allege specific facts to establish a *prima facie* case, this order uses the elements of a *prima facie* discrimination case as a guideline to assess the plausibility of plaintiff's claims — namely, that: (1) plaintiff is a member of a protected class; (2) plaintiff performed his or her job satisfactorily; (3) plaintiff suffered an adverse employment action; and (4) plaintiff was treated less favorably than a similarly situated, non-protected employee. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In response to plaintiff's repeated attempts to undermine controlling law, this order notes that "[t]he facts . . . will vary in Title VII cases, and the specification . . . of the prima facie proof required . . . is not necessarily applicable in every respect to different factual situations." *Ibid.* at n.13; *see, e.g.*, *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

This order finds that the proposed amendment to plaintiff's gender and pregnancy discrimination claims is futile because plaintiff fails to provide factual allegations that support a plausible inference that she was terminated on account of her sex and desire to get pregnant. She went absent without leave. That is why she was terminated. She failed to obtain permission to leave her job. The reason she wanted to go to Russia was not the cause of her termination. Rather, it was her failure to obtain approval. There is no law that allows

5

1  employees to decide on their own when they can abandon their jobs in order to undergo
2  discretionary medical procedures.
3      Identical to plaintiff's original complaint, the proposed amended complaint mentions
4  two other female employees. The first was allegedly allowed to work once per month while
5  pursuing her nursing degree. The other allegedly received phone calls from plaintiff's
6  supervisor, asking her to apply for a nursing job (*id.* ¶ 30). Still, these allegations do not
7  describe the actual treatment of these women, nor do they establish that these women were
8  similarly situated to plaintiff.
9      Plaintiff's amended complaint cites three decisions to support her pregnancy
10 discrimination claim: (1) *Hall v. Nalco Co.*, 534 F.3d 644 (7th Cir. 2008); (2) *Erickson v.*
11 *Board of Governors of State Colleges & Universities for Northeastern Illinois University*,
12 911 F. Supp. 316 (N.D. Ill. 1995); and (3) *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393
13 (N.D. Ill. 1994) (Dkt. No. 86-2 ¶ 55). These decisions hold that, in the Seventh Circuit,
14 infertility is covered under the PDA; thus, discrimination on this basis is a cognizable sex-
15 discrimination claim. *Hall*, 534 F.3d at 645; *Erickson*, 911 F. Supp. at 319; *Pacourek*,
16 858 F. Supp. at 1401. These decisions, however, are persuasive authority and are
17 distinguishable from the instant action because the plaintiff-employees plausibly alleged
18 that their terminations were a result of their fertility issues. In *Hall*, the plaintiff-employee
19 alleged that after returning from *approved leave* to undergo IVF, she was terminated after the
20 defendant-employer declared that it was "in her best interest due to [her] health condition."
21 534 F.3d at 646. In *Erickson*, the plaintiff-employee was terminated following the frequent
22 but *legitimate* use of her sick leave in order to receive infertility treatments. 911 F. Supp. at
23 318–19.
24     In contrast, plaintiff left for Russia on very short notice *without approved leave* after
25 failing to follow the proper procedure for requesting leave without pay. Plaintiff also did not
26 request sick leave (Dkt. No. 86-2 ¶ 10). In *Pacourek*, the plaintiff-employee was allegedly
27 "chided for her efforts to become pregnant," and "a leave policy was disparately applied against
28 her . . . because of her attempts to become pregnant." 858 F. Supp. at 1402. Here, plaintiff

does not plausibly allege that she received similarly disparate treatment. Rather, the plausible inference is that plaintiff's termination was a result of an established, hospital-wide policy that precluded extended absences without leave (Dkt. No. 50-2, Exh. A), not as a result of her infertility. Accordingly, the motion for leave to amend the gender and pregnancy discrimination claims is **DENIED**.

### *(2) Disability Discrimination and Failure to Accommodate.*

Plaintiff alleges defendants violated the Rehabilitation Act of 1973 by failing to accommodate her based on her disability (Dkt. No. 86-2 at 21). The Rehabilitation Act of 1973 prohibits, in part, disability discrimination in programs run by federal agencies. This act applies the same "standards applied under [T]itle I of the Americans with Disabilities Act of 1990" to determine whether a violation occurred. 29 U.S.C. § 791(f). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Plaintiff thus appears to allege that defendants violated the Rehabilitation Act of 1973 when they failed to give plaintiff — a federal employee with an allegedly cognizable disability under the ADA — reasonable accommodation in the form of sick leave. Though the amended complaint does not state plaintiff's disability, this order construes her inability to "give birth to children by a natural way" as the alleged disability (Dkt. No. 1 at 21). In support of the claim that infertility constitutes a disability under the ADA, plaintiff cites to *Bragdon v. Abbot*, 524 U.S. 624, 628 (1998), which established that reproduction is a major life activity (Dkt. No. 86-2 ¶ 68). *Bragdon*, however, does not hold that the inability to reproduce is a *per se* disability under the ADA. *See id.* at 641–42. Our court of appeals has yet to address this issue.

Regardless, plaintiff's amended complaint fails to plausibly allege that she was denied reasonable accommodation. Plaintiff cites to the dissent and an *amicus curiae* brief in *Gedulig v. Aiello*, 417 U.S. 484, 500 (1974), *superseded by* 42 U.S.C. § 2000e(k) (1978), to suggest that defendants denied reasonable accommodation by depriving plaintiff of the use of her accumulated sick leave. Brief for the United States EEOC as Amicus Curiae, *Gedulig v. Aiello*, 417 U.S. 484 (1974) (No. 73-640), 1974 WL 185756 at *21 n.12. This argument is

7

unavailing because a dissent and an *amicus curiae* brief are never binding authorities. In any event, plaintiff's amended complaint concedes that she at no point requested sick leave. It is also unclear whether plaintiff, who worked at the hospital for about a month and a half prior to leaving for Russia, had accumulated enough sick leave to sustain her extended absence (Dkt. No. 86-2 ¶¶ 2, 5). When plaintiff spoke to her supervisor about her need to travel to Russia, plaintiff's supervisor informed her that she could not pay plaintiff during this leave. Plaintiff responded that she "didn't require . . . salary and benefits when [she] was in Russia" and clarified that she sought leave without pay (Dkt. No. 86-2 ¶ 10). While plaintiff does not allege facts in her amended complaint supporting why plaintiff's supervisor could not provide paid leave, plaintiff's own exhibits suggest that she had not accrued enough sick leave to even support such a request (*see* Dkt. Nos. 86-2 ¶10; 86-23). In addition, though plaintiff's supervisor acknowledged that plaintiff was not eligible for paid leave, plaintiff was apprised of the procedure for requesting unpaid leave on two separate occasions, which she failed to follow (Dkt. No. 86-18 at 116).\*

At bottom, plaintiff's amended complaint fails to plausibly allege that she was denied reasonable accommodation. She concedes that she never requested paid leave, and does not sufficiently allege that she had enough sick leave to support her trip, nor that such a request was denied. Instead, plaintiff details two instances in which she was informed of the procedure for requesting leave without pay. Accordingly, the motion for leave to amend the disability discrimination and failure to accommodate claims is **DENIED**.

### *(3)    Age Discrimination.*

Plaintiff alleges that she was fired for being fifty years of age, supported by the allegation that the two employees who replaced her were thirty and thirty-five years old (Dkt. No. 86-2 at 20). The Age Discrimination in Employment Act of 1967 makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

---

\* Insofar as plaintiff fails to plausibly allege that she was denied reasonable accommodation, this order need not and does not address whether plaintiff's infertility is a cognizable disability under the ADA.

8

Plaintiff's amended age discrimination claim is substantively identical to her original complaint (Dkt. Nos. 1 at 17–18; 86-2 ¶¶ 60–62). This age discrimination claim was previously dismissed pursuant to Rule 12(b)(6) for failing to plead facts which plausibly allege that plaintiff was performing her job satisfactorily or that the allegedly younger employees had equal or inferior qualities (Dkt. No. 69 at 6). To the extent that plaintiff's age discrimination claim remains unchanged and did not survive a Rule 12(b)(6) dismissal, this order finds that amendment is futile. The motion for leave to amend the age discrimination claim is **DENIED**.

### B. Tort Claim (Intentional Infliction of Emotional Distress).

Plaintiff's tort claims (libel and IIED) were dismissed with prejudice in a prior order following a detailed explanation of why these claims failed (*id.* at 7–8). Plaintiff is barred from reintroducing this claim in her proposed amendment. Thus, the motion for leave to amend the IIED claim is **DENIED**.

### 2. MOTION TO STAY.

Plaintiff moves to stay her IIED, libel, and constitutional claims (Dkt. No. 96). This order notes that plaintiff's tort and constitutional claims were *dismissed with prejudice* in a prior order (Dkt. No. 69 at 7–8). In other words, these claims are not currently in play, and plaintiff is precluded from reasserting these claims. Furthermore, plaintiff's reply specifically requested that the court "dismiss [her] Libel and Constitutional claims," despite the fact that they were already dismissed with prejudice (Dkt. No. 69 at 7–8; 120 at 5). For the foregoing reasons, the motion to stay the tort and constitutional claims is **DENIED AS MOOT**.

### 3. MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION.

Plaintiff moves for leave to file a motion for reconsideration of a prior order, issued on January 3, 2019, which denied a preliminary injunction pending appeal (Dkt. No. 99). The crux of this motion is plaintiff's belief that her motion for preliminary injunction was not read before preliminary injunction was denied. In support of this allegation, plaintiff alleges that the prior order "didn't address the arguments [plaintiff] raised in [her] Motion for Injunction Pending Appeal" (*id.* at 7).

9

Plaintiff bases her motion on Civil Local Rule 7-9(b)(3), which requires a motion for eave to file a motion for reconsideration to show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Each of plaintiff's briefs, motions, and other filings are read and carefully considered before a determination is made. Though plaintiff introduced new arguments alleging procedural issues with respect to her termination, these arguments were unavailing and did not merit granting a preliminary injunction (*see* Dkt. Nos. 69 at 9; 98 at 4). Our court of appeals agrees, as evidenced by the denial of plaintiff's appeals on this issue (Dkt. Nos. 90, 131). Accordingly, the motion for leave to file a motion for reconsideration is **DENIED**.

### 4. MOTION TO SEVER.

Plaintiff also moved to sever her pregnancy discrimination claim because she is unsure whether Defendant Wilkie is a proper defendant in this claim (Dkt. No. 124 at 2). The pregnancy discrimination claim, however, was dismissed in the December 3 order and this order denies leave to amend. There is no existing claim to sever. Thus, the motion to sever the pregnancy claim is **DENIED AS MOOT**.

### 5. MOTION TO CERTIFY ACTION TO THE NINTH CIRCUIT OR APPOINT A MASTER.

Plaintiff moves to certify this action to our court of appeals or to appoint a master pursuant to 42 U.S.C. § 2000e-5(f)(4)–(5), respectively. These motions are without merit for two reasons. *First*, Section 2000e-5(f)(4) states that "it shall be the duty of the chief judge of the district . . . to designate a judge in such district to hear and determine the case." If no judge in the district is available, the chief judge of the district "shall certify this fact to the chief judge of the circuit . . . who shall then designate a district or circuit judge of the circuit to hear and determine the case." *Ibid*. From the beginning, plaintiff has been assigned district judges in a timely manner. Plaintiff filed her original complaint on June 25, 2018 (Dkt. No 1). That same day, the action was assigned to Magistrate Judge Susan van Keulen (Dkt. No. 2). Plaintiff then moved to transfer this action from San Jose to San Francisco, which was granted. From there, the action was immediately assigned to Magistrate Judge Lucy Koh (Dkt. No. 9). The action was then reassigned to the undersigned judge (Dkt. No. 33). At no point has plaintiff's action

10

been without a district judge "to hear and determine the case." *Second*, Section 2000e-5(f)(5) states that if the designated judge "has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge *may* appoint a master" (emphasis added). This order declines to appoint a master.

Finally, this order notes that plaintiff seems to agree to move forward with the action before the undersigned judge (Dkt. No. 144 at 2). Accordingly, the motions to certify this action to our court of appeals or to appoint a master are **DENIED AS MOOT**.

## CONCLUSION

This order recognizes that infertility has been recognized at least in the Seventh Circuit as a cognizable disability under the ADA. This order further assumes that plaintiff is infertile. Nevertheless, the alleged fact pattern in the instant case demonstrates that plaintiff was terminated for legitimate reasons, namely her failure to follow proper procedures for requesting an absence from work and simply, skipping out on her responsibilities at work to go to Russia for an extended time. There is nothing that remotely suggests that the VA terminated plaintiff because of infertility. That she wanted to have infertility treatments in Russia did not give her any right to walk out on her job obligations without notice and without going through VA procedures for obtaining an extended leave. The Court has already given plaintiff one opportunity to try to cure the pleading deficiencies in the complaint. The fact pattern is as clear as it is going to get. It would simply be futile to permit leave to amend.

For the reasons stated above, plaintiff's motions for leave to amend and for leave to file a motion for reconsideration are **DENIED**. Plaintiff's motions to stay, to sever, to certify the action to our court of appeals, and to appoint a master are **DENIED AS MOOT**. This case is now ready for our court of appeals. Plaintiff should be mindful of her obligation to file a timely notice of appeal if she wishes to appeal. She should not further litigate this action in district court.

**IT IS SO ORDERED.**

Dated: July 11, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11