Tatyana Evgenievna Drevaleva

347 Dolores St., Apt. 206,

San Francisco, CA, 94110

415-806-9864, tdrevaleva@gmail.com

Plaintiff in Pro Per

THE UNITED STATES DISTRICT COURT

FOR NORTHERN CALIFORNIA

| | |
|---|---|
| Tatyana E. Drevaleva | Case No. 3:18-cv-03748-WHA |
| Petitioner, | |
| vs. | Additional Evidence to my Objections to |
| | Ms. Carla Dunkelberger's March 08, 2018 |
| 1) The U.S. Department of Veterans Affairs | Statement in the Investigative File. |
| 2) Mr. Robert Wilkie in his capacity as an acting Secretary of the U.S. Department of Veterans Affairs 810 Vermont Avenue, NW, Washington, D.C. 20420 | Location: Courtroom 12 |
| | Judge: Hon. William Alsup |
| Defendants | Date: September 12, 2019 |
| Facility: | Time: 8:00 AM |
| New Mexico VA Healthcare System 1501 San Pedro Drive, S.E. Albuquerque, NM, 87108 | |

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

Plaintiff Tatyana Drevaleva is hereby submitting Additional Evidence to Ms. Dunkelberger's statements in the Investigative File.

After I submitted my August 25, 2019 filing named "Objections to Ms. Dunkelberger's March 08, 2017 Statement in the Investigative File, I reviewed again Attachment 16 to my June 25, 2018 Complaint for Employment Discrimination. This Attachment is an Investigative File. I found the pieces of evidence that support my position that the Ms. Dunkelberger lied about the reasons of terminating my employment. In her March 08, 2018 Investigative Statement, she lied that she was not aware of my sex and my disability.

See Exhibit 37 which is an April 18, 2017 Report of Contact.

"Tatyana Drevaleva told me that she needs to go to Russia in a few months for 4-6 weeks to "make an embryo." She stated she only had a few months worth of medication she needed to be on to help her to be able to "make an embryo." Then, after she has saved up enough money she would need to go back to Russia as she would be hiring a surrogate to have a child for her. At this time I explained to her that I would not be able to approve her request at my level of authority due to the length of time she was requesting and that Dr. Prince, Associate Director of Patient Care Services would be the one to approve or deny her request. I explained to her that she does not qualify for FMLA at this time because she has less than 1 year of service. In order to request leave she would need to complete an OPM 71 and provide supporting medical documentation. She stated her doctor was in Russia and that she could ask him to write a letter for her but it would be in Russian. I explained to her that the documenation would need to either written in English or be translated from Russian to English. I also talked to her about possibly finding a doctor in town that may be able to provide her with medical documentation and medication in the event she was not able to get m approved leave of absence until later. Ms. Drevaleva verbalized understanding of the proper procedure to request leave."

My objections.

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

1) Ms. Dunkelberger knew that I am a woman because I needed to go to Russia "to make an embryo"
2) She knew that I was dependent on the medication named Jeanine because this medication was prescribed for the IVF purpose
3) Ms. Dunkelberger's citation of the FMLA was completely irrelevant because she was obligated to give me an Advanced Sick Leave for the purpose of pregnancy as to a Title 38 employee pursuant to the AFGE Master Agreement
4) Only my medical doctors in Russia had all relevant medical documentation regarding my past IVF attempts. The medical doctors in the United States didn't have this information and therefore were not able to give me a medical document confirming my intention to perform the next IVF attempt. At that time, I needed the medicine named Jeanine that was not available in the United States. The medical doctors in the United States were not able to issue a prescription for this medicine. Moreover, there was no reason for me to find a doctor in Albuquerque, NM because I would not be able to pay for the actual IVF procedure because of ifs very high price. My only choice was to go to Russia to refill a prescription for my medication, to undergo a complete medical examination, and to perform a free of charge IVF attempt
5) I followed the "proper" procedure to request a Leave Without Pay that was described by Ms. Dunkelberger because I spoke to Ms. Dunkelberger, I told her about my desire to get pregnant, I submitted an OPM 71 form, and I provided my medical documentation on both Russian and English languages.

See Exhibit 38 which is a May 16, 2017 Report pf Contact,

"Tatyana Drevaleva came to my office on 5/25/17 to speak about her need to go to Russia. She stated that since Russia offers a Free one time invitro fertilization (1VF) she wanted to try this before she made "an embryo" as previously discussed. She went on to explain that she made a mistake and only <u>has 5 pills left (that are required to help with IVF) and that she thought</u>

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

1  she had more. These pills were prescribed by her doctor in Russia and can only be obtained in
2  Russia. She had found one pharmacy in New York that advertised on the internet they could get
3  this medication. She stated she was planning to contact the pharmacy in New York to see if she
4  could obtain the medication before she ran out and would let me know on May 16th if she was
5  able to get the pills. I reminded her at this time she would need to complete an OPM 71, provide
6  supporting medical documentation to request any time off, and that it had to be approved by by
7  Dr. Prince, Associate Director of Patient Care Services prior to leaving; that I could not approve
8  her request. Ms. Drevaleva verbalized understanding. Ms. Dreveleva did not contact me on
9  5/16/17 to let me know if she had obtained the medication from New York."

11  My objections.
12  1) Ms. Dunkelberger claimed that I came to her office on May 25, 2017. On that day, I
13     was in Russia, and there was no way for me to come to Ms. Dunkelberger's office in
14     Albuquerque, NM
15  2) I didn't say to Ms. Dunkelberger that Russia offered only one free of charge IVF
16     procedure
17  3) Ms. Dunkelberger confirmed her knowledge of my disability because I had only five
18     pills left, I was dependent on these pills, these pills were for the IVF purpose, and
19     these pills could be obtained only in Russia
20  4) I told Ms. Dunkelberger that I had attempted to find these pills in the United States. I
21     found a web-site that advertised a Russian pharmacy in New York. However, when I
22     attempted to make a phone call to the pharmacy, nobody answered. I know that these
23     pills are not licensed for being sold in the United States. Any attempt of selling these
24     pills in the United States was illegal. I believe that the online pharmacy was a scam,
25     and I couldn't put my credit card number on that web-site
26  5) I followed Ms. Dunkelberger's instructions to obtain a LWOP. I submitted an OPM
27     71, and I submitted the documentation from my Russian OB/GYN on both Russian

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

and English languages. However, I couldn't afford to wait until Dr. Prince approves my Request for a LWOP prior to my departure to Russia because at that time I had only three pills left, I needed to travel for 48 hours, and I couldn't afford to miss a pill. However, I obtained a verbal approval of Mr. Johnson to go to Russia to refill a prescription of the hormonal pills and to perform an IVF attempt

6) Even though Ms. Dunkelberger knew about my sex (female), my intention to get pregnant (to perform an IVF attempt in Russia), and my disability (I had five hormonal pills left, and I depended on these pills for the purpose of the IVF procedure), she never offered me to apply for an Advanced Sick Leave, for a Voluntary Leave Bank Program, for an Advanced Annual Leave, for a Voluntary Leave Transfer Program, and she never notified Dr. Prince that the purpose of my trip to Russia was an IVF procedure, and I couldn't wait until I obtain Dr. Prince's permission to leave because I had only a few hormonal pills left. Also, Ms. Dunkelberger had an authority to approve my request for leave for the purpose of pregnancy pursuant to Article 35 of the AFGE Master Agreement but she didn't do it.

See Exhibit 39 which is a copy of the Memorandum (unnumbered) with the phone numbers to call for requesting a Sick Leave for the purpose of emergency. Ms. Dunkelberger gave me this Memorandum, and I signed it on April 18, 2017.

See Exhibit 40 which is a copy of my medical documents from my Russian doctor translated into English language that I emailed to the Agency. These documents are a part of the Investigative File (Attachment 16 to my Complaint), pages 145-146. The Agency, in fact, received these documents. The Agency knew about my purpose to go to Russia for the IVF procedure. Mr. Johnson gave me a verbal permission to go to Russia to obtain more hormonal pills and to perform an IVF procedure. However, the Agency placed me on an Absent Without

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

Leave (AWOL) status, didn't give me both a Notice and an opportunity to be heard, and terminated my employment.

See Exhibit 41 which is a copy of Mr. Johnson's letter to Dr. Prince. In this letter. Mr. Johnson wrote, "

"05/18/2017. Tatyana Drevaleva was hired as a telemetry technician On April 2, 2017 and participated in NEO on April 3, 2017. She is currently orienting as a telemetry technician on the night shift. While attending the NEO class in April Tatyana informed Carla Dunkleberger (Manager 5DT) that she needed to take extended leave of six weeks and go to Russia for a medical procedure. At that time, Carla informed Tatyana that since she just started she was not eligible for [MLA and she had not accrued enough leave to support a six week absence. Tatyana was also told that medical documentation, in English, would be needed prior to approval of Leave Without Pay. On the morning of May 17, 2017 Tatyana informed the 5D management team that she was leaving to Russia on Thursday May 18, 2017 for six weeks. On May 17, 2017 an OPM 71 was given to Tatyana and she filled it out providing no supporting medical documentation.

At this time, I do not recommend approval of Tatyana Drevaleva's request for Leave Without Pay."

My objections:

1) During all our conversations with Ms. Dunkelberger, she never told me that I "had not accrued enough leave to support a six week absence"
2) Citing the FMLA was irrelevant because, pursuant to Article 35 of the AFGE master Agreement, the Agency had a <u>mandatory</u> obligation to provide me with an Advanced Sick Leave for 30 days for the purpose of pregnancy because I was a Title 38 employee

Page **6** of **14**

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

      3) Mr. Johnson withheld the information from Dr. Prince that I went to Russia for the purpose of pregnancy

      4) Mr. Johnson lied that I hadn't provided my medical documentation

      5) Mr. Johnson recommended Dr. Prince not to approve my Request for leave even though Mr. Johnson had verbally approved my Leave

      6) There is no stamp with the date May 23, 2017 on this version of the document. Compare with Exhibit E to Docket No. 50-2.

See Exhibit 42 which is a copy of the June 12, 2017 letter that Ms. Dunkelberger mailed to my home postal address in Albuquerque, NM. Also, see the notification from USPS that this letter was not delivered to me, "We attempted to deliver your item at 11:12 am on June 13, 2017 in ALBUQUERQUE, NM 87108 and a notice was left because an authorized recipient was not available. You may arrange redelivery by using the Schedule a Redelivery feature on this page or may pick up the item at the Post Office indicated on the notice beginning June 14, 2017. If this item is unclaimed by June 28, 2017 then it will be returned to sender."

<u>My objections</u>.

The Agency mailed me a letter on June 12, 2017 to my home postal address in Albuquerque, NM. The Agency knew that I was not available to receive this letter in Albuquerque, NM because I was out of country. The USPS returned the letter back to the Agency. Therefore, this Letter was not delivered to me. The Agency didn't email me a copy of this letter so I could review it in Russia. In this letter, the Agency claimed that I had not provided my medical documentation on English language. It was a Libel because the Agency received this documentation on May 30, 2017. The letter was unclaimed by June 28, 2017, and it was returned back to the Agency. The Agency recklessly disregarded the fact that this letter was not delivered to me, and this letter was returned back to the Agency. Afterwards, the Agency accused me in being absent and fired me on June 30, 2017. Prior to firing me, the Agency didn't provide me

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

1  with a Notice and an opportunity to be heard in violation of 5 CFR 315.805. Therefore, the
2  Agency committed the intentional crime of discrimination and unlawful termination.

4  See Exhibit 43 which is a copy of the VA Handbook for the Title 5 Probationary Trial
5  Period Employees. "This includes employees appointed under 38 U.S.C. 7401(3), i.e., permanent
6  full-time hybrids [Medical Instrument Technicians].
7  4. [TERMINATION OF PROBATIONERS FOR UNSATISFACTORY
8  PERFORMANCEOR CONDUCT]
9  a. [VA may terminate an employee serving on a probationary or trial period because his
10 /her work  performance or conduct fails to demonstrate fitness or qualifications for continued
11 employment.  Employment is to be terminated by notifying employees in writing as to why they
12 are being separated and the effective date of the action. The information in the notice as to why
13 an employee is being terminated shall, as a minimum, consist of the conclusions as to the
14 inadequacies of his performance or conduct].
15 5. [APPEAL RIGHTS TO THE MERIT SYSTEMS PROTECTION BOARD.
16 Probationary employees may appeal to the Merit Systems Protection Board in writing the
17 decision to terminate them for unsatisfactory performance or conduct based upon the following ]:
18 a. [Discrimination. An employee may appeal to the Board under this chapter a
19 termination not required by statute which the employee alleges was based on partisan political
20 reasons or marital status.]
21 b. [Improper Procedure. A probationer may appeal on the grounds that the termination
22 was not effected in accordance with the procedural requirements of 5 CFR 315.805.]"

24 Also, read 5 CFR 315.805, Termination of probationers for conditions arising before
25 appointment.

Page **8** of **14**

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

"Subject to § 315.803(b), when an agency proposes to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following:

(a) Notice of proposed adverse action. <u>The employee is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action</u>.

(b) Employee's answer. <u>The employee is entitled to a reasonable time for filing a written answer</u> to the notice of proposed adverse action and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.

(c) Notice of adverse decision. <u>The employee is entitled to be notified of the agency's decision at the earliest practicable date. The agency shall deliver the decision to the employee at or before the time the action will be made effective.</u> The notice shall be in writing, inform the employee of the reasons for the action, inform the employee of his right of appeal to the Merit Systems Protection Board (MSPB), and inform him of the time limit within which the appeal must be submitted as provided in § 315.806(d)."

<u>My objections</u>.

Obviously, the Agency violated the procedural requirements of the VA Handbook and 5 CFR 315.805 because the Agency didn't give me a Notice of the proposed adverse action and didn't give me an opportunity to be heard.

See Exhibit 44 which is a Memorandum 05-48, EMPLOYEE COURTESY AND CONDUCT,

"f. Leave Administration: Employees are responsible for reporting for duty as scheduled and being at their post of duty during official duty hours. <u>Employees are responsible for properly requesting leave and acquiring approval for said leave prior to its use</u>. Failure to adhere to proper leave requesting procedures could result <u>in corrective actions</u>."

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

1         <u>My objections</u>.

2         I followed this policy because I obtained Mr. Johnson's permission to go to Russia prior

3   to taking the leave. Also, I submitted the medical documentation and Form OPM 71.

4

5         See Exhibit 45 which is a Memorandum 05-11, Title 5 Leave Policy,

6         "1. **Policy**: To establish policies and procedures regarding leave administration for full-

7   time …and Hybrid <u>Title 38</u> occupations. The policy shall be administered on a uniform and

8   equitable basis within the scope of applicable laws and regulations and negotiated agreements.

9         d. **Sick Leave (SL)**: An employee who is incapacitated for duty has the responsibility to

10  request <u>approval from immediate supervisor</u>, leave approving official, or if the employee cannot

11  call personally, have some responsible person report the illness or incapacitating injury as soon

12  as practicable. <u>Generally, this will be at the beginning of the tour of</u> duty but not later than 2

13  hours thereafter. The employee's obligation is to complete one phone call to the established

14  number or an alternate number employee was notified to use in order to request sick leave. If the

15  supervisor is not available, employee may use voicemail to notify supervisor of type of leave

16  requested due to incapacitation for duty. Sick leave of three (3) days or less may be requested

17  orally and approved by the supervisor (see Attachment A); however, ETA Menu request must

18  also be completed. <u>An employee on SL for more than three (3) workdays must request SL</u>

19  <u>through the ETA Menu upon return to duty and furnish satisfactory medical evidence of the need</u>

20  <u>for SL during the period of absence.</u> An employee who expects to be absent more than 1 day will

21  inform <u>the supervisor</u> of his/her expected date of return to duty and notify <u>the supervisor</u> of any

22  change. <u>In the case of extended illness, daily reports will not be required. The employee may be</u>

23  <u>required to call his/her supervisor prior to returning to duty</u>.

24        g. **Advanced Sick Leave** is for the purpose of <u>serious disability, ailments, or for adoption</u>

25  <u>related purposes.</u> An employee with no time limit in his or her appointment may be granted

26  advanced sick leave not in excess of 30 days (240 hours). An employee serving under a time

27  limited or term appointment may be granted sick leave u to the total leave that would otherwise

28

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

be earned during the term of the appointment. There may not be more than 30 days (240 hours) of advanced sick leave on an employee's record at any one time. In the case of sick leave for family care and bereavement, any or all of the first five (5) days (40 hours or its equivalent for part-time employees or employees on uncommon tours of duty) used for those purposes each leave year may be advanced.

  i. **Other Types Of Leave** which are available include advanced AL, SL for adoption, SL for General Family Care or Bereavement/ SL to Care for a Family Member with a Serious Health Condition (see Medical Center Memorandum (MCM) 05-38, Sick Leave for General Family Care or Bereavement/Sick Leave to Care for a Family Member with a Serious health Condition), Military Leave, Court Leave, leave for workers compensation cases, <u>absences for maternity reason, leave in connection with travel</u>, paid leave for bone marrow or organ donors, absences for religious purposes, excused absences. An employee may invoke the Family Medical Leave Act (FMLA) (see MCM 05-36, Family and Medical Leave Act). Employees may request to become a leave recipient under the Voluntary Leave Transfer Program (VLTP). (See MCM 05-24, Voluntary Leave Transfer Program (VLTP).

  j. <u>See Attachment A through C for Leave Chart and Leave Request Templates</u>.

  4. **References**: 5 United States Code (USC) §6301-6308; 6321-6323; 6326; 5 Code of Federal Regulations (CFR) Part 63; VA Handbook 5011, Hours of Duty and Leave; Master Agreement between the Department of Veterans Affairs and American Federation of Government Employees.

  <u>My objections</u>.

  Ms. Dunkelberger had an authority to grant me with an Advanced Sick Leave for 30 days for the purpose of pregnancy. Pursuant to Article 35 of the AFGE Master Agreement, she was obligated to notify me <u>at the time of my request</u> whether my request for an Advanced Sick Leave is granted or denied.

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

Instead, the Agency withheld the information from me about the Advanced Sick Leave and other types of the Leave. The Agency forced me to submit a Request for a LWOP. Forwarding my Request for a LWOP to Dr. Prince, Mr. Johnson misled her about the reasons why I requested the LWOP. Now being aware that I requested the LWOP for the purpose of pregnancy. Dr. Prince denied it. Afterwards, Ms. Dunkelberger procrastinated for 20 days before she mailed this denial to my home postal address in Albuquerque, NM. The letter was not delivered to me because at that time I was in Russia. Afterwards, Ms. Dunkelberger accused me in being absent from work and fired me. Afterwards, Ms. Dunkelberger lied about the reasons of terminating my employment, and I was unable to get the Unemployment Insurance Compensation. My subsequent employment offer at the Minneapolis VAMC was cancelled.

Also, see the forms for requesting an Advanced Sick Leave (Attachment B to Exhibit 45.)

See Exhibit 46 which is Memorandum 05-8, Tours of Duty.

"c. Employees are expected to be on duty the full period of the tour of duty, unless absent on approved leave…"

<u>My objections</u>.

I was excused from being on duty because my leave was verbally approved by Assistant Manager Mr. Phil Johnson prior to actually taking the leave.

**Conclusion.**

I am a Pro Se litigant, and I am not a lawyer. When I received my Investigation File (Attachment 16 to my Complaint), I had no idea how to review it and to what to pay attention to. The investigative file contained over 200 pages, and I didn't know what documents to present to the attention of the Court and how to present them. Moreover, while issuing his December 03, 2018 Order, Hon. Judge William Alsup paid more attention to the legal issues and the case laws, and the Judge didn't pay attention to the factual allegations. Therefore, after my initial Complaint

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

was dismissed, and I was granted a permission to file an Amended Complaint, I was searching the case laws, I paid more attention to the legal issues, and I paid less attention to the factual allegations.

While issuing his July 11, 2019 Order, Mr. Alsup paid more attention to the factual allegations, and he paid less attention to the legal issues. Therefore, after my case was dismissed, I started to pay more attention to the factual allegations, and I started to find more ways to prove my Complaint. I was lucky to be able to find all necessary information in Attachment 16 (the Investigation File) to my Complaint. I am underlying again that, prior to July 11, 2019, the Parties and the Judge discussed the legal issues and the case laws, and we didn't discuss every piece of evidence. In his July 11, 2019 Order, Mr. Alsup accused me in not following the "proper" leave policies and procedures. Afterwards, my goal was to demonstrate that I actually followed all proper leave policies and procedures, and the Agency didn't follow the mandatory [Advanced] Sick Leave policies and procedures for pregnant Title 38 employees.

While opposing my Motion for Preliminary Injunction and filing a Docket No. 50, 50-1, and 50-2, Defendants did the following:

1) Severely redacted Ms. Dunkelberger's Reports of Contact
2) Redacted Mr. Johnson's May 18, 2017 letter to Dr. Prince
3) Submitted only a Memorandum (unnumbered) and failed to submit an MCM 05-11, an MCM 05-48, an MCM 05-8, the VA Handbook, and Article 35 of the AFGE Master Agreement
4) Intentionally withheld the information about the Advanced Sick Leave and other types of the leave that were available for employees.

I am not sure if Ms. Dunkelberger redacted her Reports of Contact herself or if it was Ms. Robinson who redacted the documents. Also, I am not sure if, submitting the documents in support of her Declaration (Docket No. 50-1), Ms. Dunkelberger intentionally omitted to submit an MCM 05-11, an MCM 05-8, an MCM 05-48, and Article 35 of the AFGE Master Agreement, or it was Ms. Robinson who withheld these documents from the attention of the Court.

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA

1   Also, Docket No. 50 contains only a Declaration of Ms. Carla Dunkelberger and doesn't
2   contain a Declaration of Mr. Phil Johnson. I am not sure if Ms. Robinson spoke to Mr. Johnson
3   and what he said to her. I am also not sure if Ms. Robinson obtained a statement of Mr. Johnson
4   but withheld this statement from the attention of the Court. I am sure that, if questioned, Mr.
5   Johnson would confirm that he had verbally allowed me to go to Russia for the purpose of
6   refilling a prescription of the hormonal pills and performing the IVF procedure.

7   Because I am inexperienced in reviewing the Investigation File (Attachment 16), and
8   because I didn't realize that all missing documents are available in that File, I didn't present
9   these documents to the attention of the Court during the litigation. It was my inadvertence,
10  mistake, and excusable neglect. I am bringing my apologies to the Court.

11  During the process of litigation at the District Court, Hon. Judge William Alsup was
12  unable to make a correct decision because of lack of both information and documentation. Also,
13  the Judge recklessly disregarded the fact that the Agency mailed a June 12, 2017 letter to my
14  home postal address in Albuquerque, NM knowing that I was in Russia, and I could not be able
15  to receive this document. I pointed this fact out many times during the litigation at the District
16  Court but Mr. Alsup didn't pay attention and didn't care. Afterwards, Mr. Alsup accused me in
17  not following the "proper" leave policies and procedures and kicked me out of the lawsuit.

18  Therefore, the Plaintiff, the Defendants and/or their Attorney at Law, and the Judge are
19  guilty for achieving the wrong decision in the July 11, 2019 Order and the July 11, 2019
20  Judgment.

21  I declare under the penalty of perjury and under the Federal laws that all foregoing is true
22  and correct. Executed at San Francisco, CA on August 31, 2019.

23  Respectfully submitted,

24  
25  s/ Tatyana Drevaleva

26  Plaintiff Pro Se
27  August 31, 2019

28

Additional Evidence to Ms. Dunkelberger's statement, case No. 3:18-cv-03748-WHA