IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATYANA EVGENIEVNA DREVALEVA,

       Plaintiff,

    vs.                  No.  21-cv-761 WJ-JFR

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, ET AL.

       Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S FIRST
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 464)**

The Court should deny *pro se* Plaintiff Tatyana Evgenievna Drevaleva's First Motion for Partial Summary Judgment (the "Motion").[1] As a probationary employee at the Raymond G. Murphy VA Medical Center, Plaintiff abruptly left her job for three months to obtain fertility treatment in Russia without obtaining approval for leave without pay ("LWOP"). Because Plaintiff was absent without leave ("AWOL"), the hospital terminated her. Plaintiff contends that Defendants discriminated against her and violated her constitutional rights by denying her leave and terminating her.

Before this case was transferred to the District of New Mexico, the District Judge dismissed the Complaint (Doc. 1) in its entirety. *See* Doc. 69. The U.S. Court of Appeals for the Ninth Circuit affirmed the dismissal except with respect to Plaintiff's claims for sex discrimination under Title VII and failure to accommodate under the Rehabilitation Act. *See* Doc. 291 at 5-6 ("In sum, we

---

[1] Plaintiff's Motion omits the recitation required under D.N.M.LR-Civ. 7.1(a). Plaintiff conferred with the undersigned after she filed her Motion, and the undersigned informed her that the Motion is opposed.

reverse the dismissal of Drevaleva's sex discrimination claim and failure-to-accommodate claim, and remand for further proceedings as to these claims only."). Undeterred, Plaintiff moves for summary judgment on a wide variety of extraneous claims, several of which were not raised in the Complaint. *Compare* Doc. 464 at 4-5 *with* Doc. 1 at 10-23.

The Court should deny Plaintiff's Motion as to all claims not covered by the Ninth Circuit's limited remand since they are not properly before the Court. Furthermore, the Court should deny Plaintiff's Motion as to the remanded claims, since Plaintiff's Motion comes nowhere close to showing that she is entitled to judgment as a matter of law.

### UNITED STATES' RESPONSES TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS ("PUMF")

As noted in the District Court for the District of New Mexico's Court's Guide for Pro Se Litigants, "[i]t is a pro se litigant's responsibility to become familiar with and to comply with the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of New Mexico* (the 'Local Rules'). Guide for Pro Se Litigants (Nov. 2019), *available at* https://www.nmd.uscourts.gov/sites/nmd/files/ProSePackage.pdf, at 4 (last visited Aug. 27, 2021).

Plaintiff appears to be aware of at least some of the Local Rules. *See* Doc. 464 at 2-3 (requesting an extension of the page limits and expedited briefing pursuant to Local Rules 7.4(c) and 7.5). However, she does not yet seem to have familiarized herself with the Local Rule governing summary judgment motions. For example, Plaintiff's Memorandum of Points and Authorities does not "set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M.LR-Civ. 56.1(b). Nor does it include numbered facts that "refer with particularity to those portions of the record upon which the movant relies." *Id*. Instead, Plaintiff's "statement of facts" lists eight different documents that she previously filed.[2]

---

[2] Plaintiff's Motion also includes her own declaration but does not cite to it. *See* Doc. 464-1. The

*See* Doc. 464 at 3-4. While Plaintiff intersperses various facts into her "Legal Standard" section, *see id*. at 5-41, her citations are to Excerpts of Record from two of her appeals, which she asks the Court to "retrieve," *id*. at 2.

"D.N.M.LR-Civ. 56.1(b) is designed to isolate the relevant facts and to present them in an orderly fashion to the Court, and when parties do not follow the procedures listed in this local rule, the Court may have difficulty properly determining what the relevant facts are." *Coffey v. United States*, 870 F. Supp. 2d 1202, 1209 (D.N.M. 2012). Because Plaintiff did not comply with Local Rule 56.1, the Court should deny her Motion without prejudice. *See Diab v. Baca*, No. 16-CV-01002-MCA-GJF, 2017 WL 10276030, at *1 (D.N.M. Sept. 21, 2017) (denying summary judgment motion of pro se litigant who failed to comply with Local Rule 56.1); *Foti v. Bernalillo Cty.*, No. CIV 14-0667 JB/SMV, 2015 WL 1640445, at *1 (D.N.M. Mar. 30, 2015) (same).

To the extent the Court considers Plaintiff's Motion notwithstanding its noncompliance with Local Rule 56.1(b), Defendants will address only those facts that Plaintiff uses to support her sex discrimination and failure-to-accommodate claims. *See* Doc. 464 at 31-41. For ease of reference, Defendants will quote the facts before each response.

**PUMF 1:**      "I actually provided the Agency with my medical certification three times:

1) On May 18, 2017 on Russian language (**ER 03748 Vol. 1, pages 29-30**)

2) On May 30, 2017 on English language (**ER 03748 VoI. 1, pages 32-33 and 264, 266**)

3) On July 14, 2017 on English language (**ER 03748 Vol. 1, pages 39-41 and 263**.)"

Doc. 464 at 32 (emphasis in original).

**RESPONSE**:  PUMF 1 is misleading, not supported by the evidence, and immaterial. Defendants

---

declaration consists of conclusory statements that Defendant discriminated against her and violated her rights. *See id*.

admit that on the dates listed above, Plaintiff emailed documents to agency employees purporting to constitute original or translated versions of medical documentation from Russia. Plaintiff has not presented these documents in admissible form because they are not properly authenticated. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1155 n.6 (10th Cir. 2013) (noting that documents that are unauthenticated "cannot be considered on a summary-judgment motion"); *see also* Fed. R. Evid. 901; Fed. R. Evid. 902(3). Defendants deny that these documents were sufficient to constitute "medical certification" within the meaning of Office of Personnel Management ("OPM") Form 71 or that submission of these documents was sufficient to entitle Plaintiff to receive LWOP. *See* Doc. 50-1 (Decl. of Carla Dunkelberger) ¶ 10 (noting that granting LWOP is a matter of administrative discretion except under limited circumstances that did not apply to Plaintiff); Doc. 50-2 at 18; *id.* at 9 (OPM 71 form bearing Plaintiff's signature certifying that "I understand that I must comply with my employing agency's procedures for requesting leave/approved absence").

**PUMF 2:**     "On May 17, 2017, Mr. Johnson verbally allowed me to go to Russia to refill a prescription of my hormonal pills and to perform an IVF procedure, see (**ER 03748 Vol. 1, page 219**), 'At this time I stated to the complainant that I could not approve Leave Without Pay but I would turn in the documentation **and if this was that important then s/he should go**.'" Doc. 464 at 33 (first emphasis and misspelling in original).

**RESPONSE**:  PUMF 2 is misleading. Defendants admit that that the second sentence accurately quotes language from Mr. Johnson's EEO Affidavit, though Plaintiff added the bold and underline emphasis. However, Defendants deny that Mr. Johnson's statement constituted permission by Defendants for Plaintiff to abandon her job without obtaining approval pursuant to the agency's LWOP policy. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 10.

4

**PUMF 3**:      "Starting May 21, 2017, the Agency placed me on the Absent Without Leave (the AWOL) status without notifying me (**ER 03748 Vol. I, pages 297-299**.)." Doc. 464 at 34.

**RESPONSE**:  PUMF 3 is misleading. Defendants admit that Plaintiff was placed on AWOL status on or about May 21, 2017, but Defendants notified Plaintiff by sending a letter to her address of record. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 9; Doc. 50-2 at 13.

**PUMF 4**:      "On May 17, 2017, I obtained a verbal permission of Assistant Manager Mr. Johnson to go to Russia to refill a prescription of my hormonal pills and to perform an IVF procedure (**ER 03748 Vol. 1, page 219**), '... s/he should go.'" Doc. 464 at 35.

**RESPONSE**: PUMF 4 is misleading. Defendants admit that that the "s/he should go" language is an accurately quotes language from Mr. Johnson's EEO Affidavit, but Plaintiff omitted his statement that he could not approve her LWOP request. Hence, Defendants deny that this statement constituted permission by Defendants for Plaintiff to abandon her job without obtaining approval pursuant to the agency's LWOP policy. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 10.

**PUMF 5**:      "On May 17, 2017.I filled out an OPM 71 form requesting a Leave Without Pay (a LWOP) from May 18 to July 09, 2017 (**ER 03748 Vol. 1, page 287**.)[.]" Doc. 464 at 35.

**RESPONSE**:  PUMF 5 is misleading. Plaintiff's OPM 71 requested leave until July 7, 2017, not July 9, 2017. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 8; Doc. 50-2 at 9.

**PUMF 6**:      "Initially, I expected to return back to work on July 07, 2017. However, on July 14, 2017, I emailed the second medical certification from my Russian OB/GYN that was translated into English language and that informed the Agency about my need to stay in Russia for a longer time to undergo the additional medical examination (**ER 03748 Vol. 1, pages 39-41 and 263**.)[.]" Doc. 464 at 36 (quoting letter).

**RESPONSE**: PUMF 6 is misleading, not supported by the evidence, and otherwise immaterial.

5

Defendant admits that on July 14, 2017, Plaintiff emailed a document to agency employees purporting to constitute a translated version of medical documentation from Russia. Plaintiff has not presented this document in admissible form because it is not properly authenticated. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1155 n.6 (10th Cir. 2013) (noting that documents that are unauthenticated "cannot be considered on a summary-judgment motion"); *see also* Fed. R. Evid. 901; Fed. R. Evid. 902(3). To the extent Plaintiff quotes the translated letter in her Motion, the document speaks for itself. Defendants deny that this document was sufficient to constitute "medical certification" within the meaning of OPM Form 71 or that submission of this document was sufficient to entitle Plaintiff to receive LWOP. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 10 (noting that granting LWOP is a matter of administrative discretion except under limited circumstances that did not apply to Plaintiff); Doc. 50-2 at 18. In any event, Plaintiff had already been notified via email of her termination by the time she submitted this documentation. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 11; Doc. 50-2 at 22-25.

**PUMF 7**:      "On August 10, 2017, I emailed to both Dunkelberger and Johnson, and I informed that I would return back to the United States on August 17, 2017 (**ER 03748 Vol. 1, page 47**)[.]" Doc. 464 at 38 (quoting email).

**RESPONSE**: PUMF 7 is immaterial. Defendants admit that Plaintiff sent the email. To the extent Plaintiff quotes the email in her Motion, the document speaks for itself. Plaintiff had already been notified via email of her termination by the time she sent the email. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 11; Doc. 50-2 at 22-25. The date of Plaintiff's return is immaterial to whether the agency discriminated against her.

**PUMF 8**:      However, the Agency placed me on the AWOL starting May 21, 2017 (**ER 03748 Vol. 1, page 297**)[.]" Doc. 464 at 39.

6

**RESPONSE:** Admitted.

**DEFENDANT'S ADDITIONAL MATERIAL FACTS ("DAMF")**

**DAMF A:**     Plaintiff was hired as a Medical Instrument Technician at the Raymond G. Murphy VA Medical Center starting on or about April 3, 2017. *See* Doc. 1 at 2. Plaintiff's work entailed observing cardiac monitors. *See id.*

**DAMF B:**     At all times when Plaintiff was employed at the Raymond G. Murphy VA Medical Center, she was a probationary employee because she was still within her first year of employment. *See* EEO Affidavit of Carla Dunkelberger, attached as Ex. A, at 2.

**DAMF C:**     On April 18, 2017, Plaintiff signed an acknowledgment that LWOP requests must be approved by the Service Chief. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 5; Doc. 50-2 at 3.

**DAMF D:**     According to the agency's leave policy, granting LWOP is a matter of administrative discretion, and employees are not entitled to LWOP except under very limited circumstances, including disabled veterans, reservists and National Guard members, and employees who have applied for disability retirement. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 10; Doc. 50-2 at 18.

**DAMF E:**     LWOP requests for more than 15 days of leave must be approved by the "[a]ppropriate PENTAD member,"[3] which in Plaintiff's case was Dr. Tina Prince, the Associate Director of Patient Care Services." *See* Doc. 50-2 at 20; Doc. 50-1 (Dunkelberger Decl.) ¶ 10.

**DAMF F:**     On April 18, 2017, Plaintiff notified her supervisor, Carla Dunkelberger, that she wished to take six weeks of leave to go to Russia for a medical procedure. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 6. Ms. Dunkelberger informed her that Dr. Prince would have to approve such a request. *See id.* Ms. Dunkelberger also requested that medical documentation from

---

[3] The "PENTAD" is the hospital's leadership team.

Plaintiff's Russian doctor be translated by a certified translator and provided *before* Plaintiff's departure. Doc. 1 at 5.

**DAMF G**:      Plaintiff sought treatment in Russia because she could not afford it in the United States but could obtain it free of charge in Russia. Doc. 1 at 4.

**DAMF H**:      On May 15, 2017, Plaintiff reiterated her request for leave, and Ms. Dunkelberger informed her that she would need to complete a leave request form, provide supporting medical documentation, and receive approval from Dr. Prince *before* taking leave. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 7.

**DAMF I**:      On May 17, 2017, Plaintiff worked a night shift while her supervisor, Ms. Dunkelberger, was absent. *See* Doc. 1 at 5.

**DAMF J**:      Plaintiff informed the acting Nurse Manager on duty, Mr. Phillip Johnson, that she would be flying to Russia the next day for a medical procedure. *See* EEO Affidavit of Phillip Johnson, attached as Ex. B, at 2.

**DAMF K**:      Mr. Johnson provided Plaintiff with a leave request form (OPM Form 71) and notified her that she would have to fill it out and provide supporting documentation in English. *See id*. at 2-3. However, he informed her that he could not approve LWOP. *See id*. at 3.

**DAMF L**:      On May 17, 2017, Plaintiff submitted a request for LWOP on OPM Form 71, specifying the requested dates as May 18, 2017 to July 7, 2017, but the request did not include any supporting documentation. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 8; Doc. 50-2 at 10.

**DAMF M**:      Plaintiff emailed a document from her doctor to Ms. Dunkelberger and Mr. Johnson on May 18, 2017, but it was in Russian. *See* Doc. 1 at 6.

**DAMF N**:      Plaintiff left for Russia later that day and remained there for three months, returning to the United States on August 18, 2017. *See* Doc. 1 at 6, 9.

**DAMF O**:      On May 18, 2017, Dr. Prince denied Plaintiff's request for LWOP due to failure to provide appropriate supporting documentation in English prior to her departure. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 8; Doc. 50-2 at 11.

**DAMF P**:      Plaintiff's absence negatively affected the workplace by impacting patient care and decreasing staff morale because she failed to show up for scheduled shifts. *See* Ex. A at 3.

**DAMF Q**:      On June 9, 2017, Ms. Dunkelberger mailed Plaintiff a letter notifying her that her leave request had been denied due to inadequate documentation. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 9; Doc. 50-2 at 13.

**DAMF R**:      On July 1, 2017, Plaintiff emailed Ms. Dunkelberger and Mr. Johnson to request additional time off to stay in Russia because her original return date of July 7, 2017 was no longer possible due to a delay in obtaining the procedure. Doc. 1 at 7.

**DAMF S**:      On July 3, 2017, Ms. Dunkelberger emailed Plaintiff a letter notifying her that she had been terminated effective June 30, 2017 due to being on AWOL status since May 21, 2017. *See* Doc. 50-1 (Dunkelberger Decl.) ¶ 11; Doc. 50-2 at 24-25.

## LEGAL STANDARD

"If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Anderson v. Dep't of Health & Hum. Servs.*, 907 F.2d 936, 947 (10th Cir. 1990) (emphasis in original; internal quotation marks and alteration omitted). "Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party . . . to produce evidentiary materials that demonstrate the existence of a genuine fact for trial." *Id*. (internal quotation marks omitted). Hence, "where the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an

affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (internal quotation marks, emphasis, and alteration omitted).

## ARGUMENT

**I.      The Court Should Deny the Motion to the Extent It Is Based on Dismissed Claims.**

The Ninth Circuit "reverse[d] the dismissal of Drevaleva's sex discrimination claim and failure-to-accommodate claim, and remand[ed] for further proceedings as to these claims only." Doc. 291 at 5-6. Nevertheless, Plaintiff's Motion seeks summary judgment on myriad claims outside the scope of the Ninth Circuit's limited remand. *See* Doc. 464 at 4-5. The Court should disregard Plaintiff's arguments addressing these phantom claims.

**II.      Plaintiff Is Not Entitled to Summary Judgment on Her Sex Discrimination Claim.**

"To prevail on a Title VII discrimination claim, the plaintiff bears the ultimate burden of proving intentional discrimination by the employer." *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019). "When, as here, the plaintiff presents only circumstantial evidence of discrimination, [the Court] analyze the claim under the *McDonnell Douglas* burden-shifting framework." *Id*.; *see also Montoya v. Progress Rail Servs. Corp*., No. 14-CV-1009-BRB-CG, 2016 WL 10539092, at *8 (D.N.M. May 18, 2016) (applying *McDonnell Douglas* framework to a plaintiff moving for summary judgment); *Moore v. Connection*, No. CV 01-1079 WJ/JHG, 2002 WL 35649615, at *3 (D.N.M. Oct. 7, 2002) (same).

"Under the *McDonnell Douglas* framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (internal quotation marks omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id*. (internal quotation marks omitted). The plaintiff "now must have the opportunity to demonstrate that the proffered

reason was not the true reason for the employment decision," and her "burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

### A.   Plaintiff Is Not Entitled to Judgment as a Matter of Law on Her Claim of Discriminatory Denial of LWOP.

"To make her prima facie *McDonnell Douglas* case for sex discrimination, [Plaintiff] must establish (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). For purposes of this Response, Defendants do not dispute elements 1 and 3. However, Plaintiff cannot show that denial of LWOP was an adverse employment action or that she was treated less favorably than others not in the protected class.

"Conduct rises to the level of 'adverse employment action' when it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellert*h, 524 U.S. 741, 761 (1998)). Plaintiff complains that Defendants denied her request for LWOP, but Plaintiff offers no evidence that this denial by itself significantly changed Plaintiff's employment status. *See, e.g.*, *Carrasco v. New Mexico Dep't of Workforce Sols.*, No. CV 10-0999 MCA/SMV, 2013 WL 12333991, at *6 n.4 (D.N.M. Mar. 30, 2013) (holding that "being denied leave . . . [is] not actionable under Title VII's anti-discrimination prohibitions); *accord Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1125 (D. Colo. 2016) (holding that "denial of [the plaintiff's] vacation request does not constitute an adverse employment action capable of

supporting her disparate treatment claims"). Rather, what changed her employment status to AWOL and eventually termination was her unilateral decision to leave without authorization.

Plaintiff's prima facie case also fails because she has not presented evidence that she was treated differently from similarly situated male employees. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Accordingly, with respect to denial of her LWOP request, Plaintiff must show that a male probationary employee with the same supervisor was treated differently with respect to LWOP requests. Because Plaintiff offers no such evidence, the Court should conclude that she has failed to make a prima facie case as to this claim. *See Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1292 (10th Cir. 2013) (rejecting argument that another employee was similarly situated to the plaintiff, a probationary employee, because the plaintiff "offers no evidence that this other employee was also probationary or otherwise similarly situated"); *Hernandez v. Potter*, 371 F. App'x 896, 900 (10th Cir. 2010) (same).

Even assuming Plaintiff has made a prima facie case, Defendants can satisfy their "exceedingly light" burden of production to proffer a facially legitimate, nondiscriminatory reason for denying Plaintiff's request for LWOP. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotation marks omitted). Plaintiff left for Russia without first providing medical documentation in English to support her leave request or obtaining approval of her leave request from Dr. Prince.[4] DAMFs O, Q. Because the reasons supporting denial of LWOP are

---

[4] Plaintiff argues at length that the agency was not allowed to demand documentation in English and that she should have been granted provisional leave pending final medical certification. *See, e.g.*, Doc. 464 at 29-32. Plaintiff extensively cites and quotes 5 C.F.R. § 630.1208 and the analogous section of the A.F.G.E. Master Agreement to support her arguments, but this regulation implements the Family Medical Leave Act ("FMLA"). The FMLA and the implementing

facially nondiscriminatory, Defendants have discharged their burden of production under *McDonnell Douglas*. Plaintiff offers no evidence to carry her burden of persuasion to show that Defendants' reasons are a pretext for intentional discrimination. *See Montoya*, 2016 WL 10539092, at *9 (noting that at the pretext phase, "Plaintiff's burden is not light"). Consequently, Plaintiff is not entitled to judgment as a matter of law.

**B.    Plaintiff Is Not Entitled to Judgment as a Matter of Law on Her Claim of Discriminatory Termination.**

A Title VII plaintiff alleging discriminatory termination must show the following to establish a prima facie case: "(1) [s]he belongs to a protected class; (2) [s]he was qualified for his job; (3) despite [her] qualifications, [s]he was discharged; and (4) the job was not eliminated after [her] discharge." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). For purposes of this Response, Defendants do not dispute that Plaintiff has established a prima facie case. However, Defendants can easily satisfy their burden of showing a legitimate, nondiscriminatory reason for Plaintiff's termination.

Numerous courts have recognized that absence without leave constitutes a legitimate, nondiscriminatory reason for termination. *See, e.g.*, *Frazier v. Chertoff*, 372 F. App'x 474 (5th Cir. 2010) (affirming the district court's conclusion that AWOL status is a legitimate, nondiscriminatory reason for termination); *Been v. New Mexico Dep't of Info. Tech.*, 815 F. Supp. 2d 1222, 1237 (D.N.M. 2011) (holding that "'protracted absences without leave' or 'abandonment of job' constitutes a legitimate, non-discriminatory basis for termination")

---

regulations apply to employees who have "completed at least 12 months of service" in various qualifying positions. *See* 5 C.F.R. § 630.1201(b)(1)(2). Because Plaintiff was still within her one-year probationary period, Plaintiff was not eligible for FMLA leave. *See* Doc. 1 at 14 (acknowledging that Plaintiff "was a new employee and not eligible for a leave under FMLA").

Because Plaintiff has not offered any evidence to establish that Defendants' reason for termination was a pretext to discriminate against her based on sex, Plaintiff is not entitled to summary judgment on her termination claim.

### III.   Plaintiff Is Not Entitled to Summary Judgment on Her Failure-to-Accommodate Claim.

"[A] failure to accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework." *Lincoln v. BNSF Ry. Co*., 900 F.3d 1166, 1204 (10th Cir. 2018). To establish a prima facie failure-to-accommodate claim, Plaintiff must show that (1) she is disabled; (2) she was otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) the employer refused to accommodate her disability. *See Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). If Plaintiff succeeds in establishing a prima facie case, the burden shifts to Defendants to present evidence "either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (internal quotation marks omitted). For purposes of this Response, Defendant will not contest that Plaintiff has satisfied elements 1, 2, and 4.[5] Plaintiff is not entitled to summary judgment because she cannot show that her request for LWOP was a reasonable accommodation.

The Tenth Circuit has noted that "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation." *Hudson v.*

---

[5] Plaintiff contends that her disability is infertility, caused in part by age. *See* Doc. 1-12 at 1. Although the Tenth Circuit has not decided whether infertility due to age is a disability, some courts have held that it is not. *See, e.g.*, *Sipple v. Crossmark, Inc*., No. 2:10-CV-00570-MCE, 2012 WL 2798791, at *5 (E.D. Cal. July 9, 2012) ("Case law addressing the matter has unequivocally found that menopause is not a disability."); *Saks v. Franklin Covey Co*., 117 F. Supp. 2d 318, 326 (S.D.N.Y. 2000) ("This Court harbors no doubt that infertility that results from the natural aging process, rather than from some disease or defect, is not a 'disability' within the meaning of the ADA[.]"); *aff'd in part, remanded on other grounds in part*, 316 F.3d 337 (2d Cir. 2003).

*MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996). However, "employers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time." *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001). Furthermore, the employee must "provide an *expected duration of the impairment* (not the duration of the leave request)" to allow the employer to "determine whether an employee will be able to perform the essential functions of the *job in the near future* and therefore whether the leave request is a 'reasonable' accommodation." *Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000) (emphasis in original), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

Here, Plaintiff fails to present evidence that she provided her employer with the expected duration of her impairment. Hence, there was no way for the VA to know how often or for how long Plaintiff would need to take time off to seek treatment in Russia. Indeed, while Plaintiff did provide an estimated duration of her trip to Russia, she had to extend her stay due to complications. *See* DAMF R. During her treatment in Russia, Plaintiff obviously was unable to be present at her job in Albuquerque. The Tenth Circuit has recognized that "physical attendance in the workplace is itself an essential function of most jobs." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). Because Plaintiff's job entailed reading cardiac monitors in a hospital, physical attendance is an essential function of her job. *See, e.g.*, *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1238 (9th Cir. 2012) (holding that "on-site regular attendance is an essential job function of a neonatal nurse because her job duties include "working with medical equipment"). Providing Plaintiff with extending LWOP was not a reasonable accommodation because it would not "presently, or in the near future, enable the employee to do the essential functions of [her] job." *Hudson*, 87 F.3d at 1169; *see Hwang v. Kansas State Univ.*, 753 F.3d 1159,

1162 (10th Cir. 2014) (noting that "reasonable accommodations—typically things like adding ramps or allowing more flexible working hours—are all about enabling employees to work, not to not work").

Plaintiff's request for LWOP is also unreasonable because Plaintiff's travel to Russia was based on financial rather than medical reasons. According to Plaintiff, she could not afford the procedure in the United States but could obtain it free of charge in Russia. DAMF G. The Tenth Circuit has held that "employers have no obligation under the ADA to accommodate disabled employees for problems they face outside the workplace unrelated to the essential job functions of their positions or privileges of employment merely because they are disabled."[6] *Unrein v. PHC-Fort Morgan, Inc*., 993 F.3d 873, 879 (10th Cir. 2021). For example, when a legally blind hospital employee faced difficulties obtaining rides to work because she lived sixty miles away and she relied on family and friends for rides, the Tenth Circuit concluded that her request for a flexible schedule to accommodate her transportation difficulties was unreasonable. *See id*. at 878. Because the plaintiff could eliminate the transportation barrier by moving or securing more reasonable rides, the Tenth Circuit refused to place the onus on the employer to solve her self-inflicted issues. *See id*. at 879. Similarly, Plaintiff could eliminate the financial barrier to treatment by saving money, crowdfunding, getting a second job, etc. The Rehabilitation Act does not require her employer to provide her a prolonged leave to obtain the cheapest possible treatment anywhere in the world.

Even if Plaintiff has put forth sufficient evidence to establish a prima facie case, her abrupt and prolonged departure caused an undue hardship for Defendants' operations. "'Undue hardship'

---

[6] The same standards apply under the Americans with Disabilities Act ("ADA") as under the Rehabilitation Act. *See, e.g*., *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (citing 29 U.S.C. § 794(d)).

means an action requiring significant difficulty or expense in light of various factors," including the nature of the accommodation and the impact of the accommodation on operations. *Smith v. Midland Brake, Inc*., 180 F.3d 1154, 1178 (10th Cir. 1999) (en banc) (internal quotation marks omitted). Plaintiff, a medical technician, was unable to perform her work reading cardiac monitors, which negatively impacted patient care and staff morale. *See* DAMF Q. Accordingly, the Court should conclude that granting her leave request created an undue hardship. *See, e.g*., *Burnham v. Valir Health, LLC*, No. CIV-11-80-M, 2012 WL 395560, at *4 (W.D. Okla. Feb. 6, 2012) (holding that a medical marketing representative's prolonged leave of absence caused undue hardship when it impacted morale in the department and caused patient metrics to suffer).

Because Plaintiff cannot establish a prima facie case for failure to accommodate and Defendant has shown that her absence from the job caused an undue burden, the Court should deny her Motion.

## CONCLUSION

"Plaintiff's proffered evidence does not suggest that any reasonable jury would have to find for Plaintiff as a matter of law." *Moore*, 2002 WL 35649615, at *3 (D.N.M. Oct. 7, 2002). Consequently, the Court should deny Plaintiff's Motion in its entirety.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed August 31, 2021*
CHRISTINE H. LYMAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Christine.Lyman@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on August 31, 2021, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following pro se party to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

      Tatyana Evgenievna Drevaleva:  Tdrevaleva@gmail.com

                                   *<u>Filed electronically August 31, 2021</u>*
                                     CHRISTINE H. LYMAN
                                     Assistant United States Attorney