## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**TATYANA EVGENIEVNA DREVALEVA,**

      **Plaintiff,**

    **vs.**                          **No. 21-cv-761 WJ-JFR**

**UNITED STATES DEPARTMENT OF**
**VETERANS AFFAIRS, ET AL.**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER
### (1) REGARDING PENDING MOTIONS, "SUPPLEMENTS," AND "NOTICES";
### (2) SETTING STAY ON CASE PENDING REFERRAL TO MAGISTRATE JUDGE FOR CASE MANAGEMENT DEADLINES;
### and
### (3) ESTABLISHING COURT'S EXPECTATIONS FOR LITIGATION OF CASE, SUBJECT TO POTENTIAL SANCTIONS FOR VIOLATIONS OF THIS COURT'S ORDERS AND RULES

THIS MATTER comes before the Court on several motions pending in this employment discrimination case and on other matters which the Court finds appropriate to take up *sua sponte* following the transfer of this case from the Northern District of California on August 13, 2021. Doc. 453.

### BACKGROUND

Ms. Drevaleva, who is proceeding *pro se,* filed her complaint in the Northern District of California on June 25, 2018. She claims that Defendants discriminated against her and violated her constitutional rights by denying her leave and terminating her employment.[1] Defendants counter that Ms. Drevaleva was a probationary employee at the Raymond G. Murphy VA Medical

---

[1] The Department of Veterans Affairs was dismissed as an improper defendant. Doc. 69 at 7.

Center ("the VA") who abruptly left her job for three months to obtain fertility treatment in Russia without obtaining approval for leave without pay ("LWOP").

I.      **Procedural History**

United States District Judge William Alsup presided over the case while it was in the Northern District of California ("NDC").The case has a convoluted procedural history, due largely to Ms. Drevaleva's propensity for littering the docket with cumulative and irrelevant pleadings which failed to comply with the court's federal and local rules, including filing frequent notices of appeal. *See, e.g.,* Docs. 58, 70, 75, 157, 173, 196, 197, 284, 250, & 355 (Notices of Appeal). The Court condenses the now-almost 500 docket entries and provides a brief iteration of the case's history before its transfer to this Court.

On December 3, 2018, Plaintiff's claims were dismissed in their entirety by Judge Alsup, including the following claims: gender and pregnancy discrimination under Title VII; retaliation claims under Title VII; disability and failure-to-accommodate claims under the ADA and the Rehabilitation Act of 504; age discrimination claims under the ADEA; and state tort and due process claims including libel and due process violations.   Doc. 69.   Plaintiff sought reconsideration of Judge Alsup's rulings by filing motions for reconsideration and numerous "administrative motions" (*see, e.g.,* Docs. 78, 94, 96, 99, 100, 103, 108), but they were all denied (*see, e.g.,* Doc. 98, 109).

Ms. Drevaleva also filed numerous notices of appeal in her efforts to reverse Judge Alsup's rulings, trying every procedural mechanism she could imagine, regardless of the appropriateness of such notices of appeal.   Her motions for writs of mandamus, motions for reconsideration, motions to reopen under Rule 60, motions to amend, motions for injunctive relief and motion for *en banc* rehearings were all denied by the Ninth Circuit. *See, e.g.,* Docs. 115, 136, 146, 161, 188,

209, 235, 285.  There is no doubt that the Ninth Circuit must have been somewhat frustrated by Ms. Drevaleva's constant stream of procedurally defective filings, as indicated by the tone of some of its orders.  *See, e.g.,* Docs. 115, 161, 209 (advising Plaintiff that the case had been closed and that "[n]o further filings will be entertained . . .").

Undaunted by the Ninth Circuit's denials of her appeals, Plaintiff continued her efforts (unsuccessfully) to vacate the district court judgment, again resorting to procedural means that were unsuitable for obtaining the relief requested, such as motions to amend and for injunctive relief.  *See, e.g.,* Doc. 163 ("Supplemental Brief re: First Motion to Amend"); Doc. 174 (Motion for Preliminary Injunction); Doc. 171 at 2 (noting that Plaintiff continued to violate the court's local rules regarding "filing supplementary material after the operative brief was filed" and advising her that it would "not be permitted"); Doc. 193 at 2 (". . . plaintiff's action was dismissed, judgment has been entered, and the case remains closed."

After having dispensed with the flurry of defective notices of appeals filed over several months by Ms. Drevaleva, the Ninth Circuit settled into addressing Plaintiff's appeal on the merits. The court affirmed Judge Alsup's dismissal of most of Plaintiff's claims, but reversed the dismissal of Plaintiff's Title VII claims for sex discrimination and pregnancy discrimination, and for failure-to-accommodate under the Rehabilitation Act, because of the early stage of the litigation and the required liberal construction of a *pro se* plaintiff's allegations.  Doc. 291 at 3

After the Ninth Circuit issued its mandate reversing those two claims (Doc. 315, Mandate), Judge Alsup recused himself from the case (Doc. 319) which was reassigned to Chief Magistrate Judge Joseph C. Spero (Docs. 337, 338).  The case management hearing was continued to August 20, 2021 (Docs. 372, 436)—after the point at which this case was transferred to the U.S. District Court for the District of New Mexico and thus, the case management hearing never took place.

Following Magistrate Judge Spero's recusal (Doc. 450), the case was reassigned to United States District Judge Haywood S. Gilliam, Jr. *See* Docs. 450 & text entry dated 8/10/2021. Judge Gilliam denied all of Plaintiff's then-pending motions except for her unopposed motion to transfer to the District of New Mexico. He granted the motion concluding that the balance of factors under 28 U.S.C. §1404(a) favored transfer to this District. Doc. 451 at 6 ("There is no indication that any witness except Plaintiff herself is located in the Northern District of California.").

## DISCUSSION

Plaintiff's lawsuit now consists of two claims—Title VII and the failure-to-accommodate claim under the Rehabilitation Act. The Court finds that the best way to proceed is to hit the "reset" button on the entire case. This includes imposing a temporary stay and striking certain filings in order to begin with a clean slate in this Court.

## I.    Stay of Case Pending Entry of Case Management Order

Since the transfer of this case, Plaintiff has continued to file motions and other pleadings (which may or may not have anything to do with the motions she has filed) even before this Court can assess the case and establish a scheduling order.

The Court hereby REFERS this case to the Magistrate Judge assigned to the case to set a case management hearing and discuss relevant scheduling deadlines with the parties.

The Court also imposes a STAY on this case until the Magistrate Judge issues a scheduling order regarding discovery and the deadlines for pretrial matters. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (a district court has the power to stay proceedings pending before it and to control its docket for the purpose of "economy of time and effort for itself, for counsel, and for litigants"); *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir. 1963); *see also U.S. v. Schneider,* 594 F.3d 1219, 1226 (10th Cir. 2010).

4

Parties are precluded from filing any documents in this case from the date this Order is entered until a scheduling order is in place allowing pleadings to be filed.  Any filings made contrary to this Order shall be immediately STRICKEN from the record.

## II.   Pending Motions and Other Pleadings Filed by Plaintiff

In an effort to set some ground rules and clear the way to an orderly litigation process here, the Court addresses Plaintiff's pending motions and other various pleadings filed since the case was transferred from the NDC.

### A.   Plaintiff's Motion for Permission for Electronic Case Filing (Doc. 456)

Plaintiff wishes to file documents electronically in this case, noting that she was granted permission in the NDC case to do so.  Actually, Ms. Drevaleva was denied that permission initially (*see* Docs. 6, 12), and then granted access to electronic filing on a motion to reconsider the ruling (*see* Docs. 14, 21).

To electronically file documents, *pro se* parties must obtain permission from the presiding judge. *See* District of New Mexico's CM/ECF Administrative Procedures Manual at 4; Guide for Pro Se Litigants at 13. *Mallgren v. Thomas*, No. 16CV1256 JCH/KBM, 2016 WL 9725194, at *3 (D.N.M. Dec. 7, 2016).  At this time, the Court will not grant Plaintiff's request, given what this Court considers to be Plaintiff's abuse of the privilege of electronic filing while her case was being litigated in the NDC.  As an example, Judge Alsup advised Plaintiff that her constant filing of "supplementary material [such as 'supplements' and 'administrative motions'] after the operative brief has been filed is a violation" of that court's local rule. Doc. 171 at 2. Yet, within five months after receiving that directive from Judge Alsup, Plaintiff continued to file at least fourteen

additional "supplemental briefs" and within two months of Judge Alsup's directive, Plaintiff filed

at least *ten* administrative motions within a two-month period.[2]

Judge Alsup also subsequently denied Plaintiff's motions for leave to file supplemental briefs:

It is Plaintiff's responsibility to articulate her arguments in each of her filings, and
Plaintiff should take sufficient time to include all arguments that she wishes to raise
in the first instance. Plaintiff's failure to do so, leading to later efforts to supplement
her filings, is inefficient and results in a needlessly lengthy docket.

Doc. 451 at 2.  Plaintiff's conduct thus far in this District likewise demonstrates a headstrong

refusal to familiarize herself and comply with the rules of this Court.  Within a very short time

from when this case was transferred to this District, Plaintiff has already resorted to frequent and

non-stop communications to chambers by phone and e-mails.  Such *ex parte* communications

flagrantly disregard the Court's prohibition on such conduct.  *See* Court's Guide for Pro Se

Litigants  at 11 (prohibiting *pro se* parties from all *ex parte* communication with the judge or

judge's staff"); *Mallgren v. Thomas*, No. 16CV1256 JCH/KBM, 2016 WL 9725194, at *1 (D.N.M.

Dec. 7, 2016) (noting that plaintiff failed to comply with Court rules "[w]ithin the first months" of

the case, and denying plaintiff's electronic filing request where plaintiff sent ex parte to magistrate

judge).

This Court has no assurance at this time that Plaintiff can or will comply with her

responsibilities as a litigant in this case.  **Thus, Plaintiff is hereby advised that until the Court**

**has the assurance by way of her litigation conduct that she will comply with this Court's local**

**rules, Plaintiff will not be allowed to participate in electronic filing, as the Court will not**

**grant her license to abuse the privilege at the outset. Accordingly, Plaintiff's request is**

**DENIED at this time.**  *See Werner v. State of Utah*, 32 F.3d 1446, 1447 (10th Cir. 1994) (filing

---

[2] *See* "Administrative Motions" Docs. 94, 95, 96, 100, 101, 103, 106, 111, 113, 126 filed from December 28, 2018 to
February 20, 2019.

restrictions are appropriate when a litigant abuses privileges such as proceeding *in forma pauperis* and being afforded the lenience due pro se litigants).

      B.    <u>Motion for Expedited Jury Trial that is Consolidated with Hearing of My Motion</u> <u>for Permanent Injunction (Doc. 458)</u>

      Plaintiff seeks an "immediate" jury trial on all issues in this case and injunctive relief in the form of reinstatement to her job at the VA.

      The Court's first impression is that Plaintiff has violated this Court's local rule requiring a movant to confer with opposing party *before* (not *after*) the filing of a motion.  *See* Doc. 467 (Deft's resp, citing to D.N.M.LR-Civ.7.1(a).  The Court's second impression on the merits is that Plaintiffs presents her requests to the Court without having any legal or factual foundation. As Defendants observe, Plaintiff has already demanded a jury trial (Doc. 1 at 1, 18 and none of the authorities she cites provides for an expedited jury trial.  For example, her reference to Rule 65 for a "hearing at the earliest practicable date" concerns proceedings relating to requests to injunctive relief, not the setting of jury trials.

      The motion also fails on the merits.  Plaintiff puts the "cart before horse," to borrow Defendants' description of the matter.  As noted above in the procedural background history, no case management hearing was held following remand from the Ninth Circuit Court of Appeals, nor has this Court entered a scheduling order.  Plaintiff has indicated that she wishes to engage in discovery, and motions for summary judgment may be filed that would obviate the need for a trial. Thus, there may never be a trial in this case, much less an expedited one.

      Ms. Drevaleva's request for a permanent injunction is also premature.  She refers to a "motion" for an injunction, without indicating what motion that might be, and the only motion the

Court has found listed on the docket has already been denied.  *See* Doc. 451 (denying Doc. 449 among other motions).[3]

There is no proper motion for injunctive relief before the Court. While the Court must construe Plaintiff's filings liberally as a *pro se* plaintiff, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); accord *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), the Court will not go beyond what Plaintiff offers, *see United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (court "will not 'assume the role of advocate") quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

**Therefore, Plaintiff's requests for both an "expedited trial" and a "permanent injunction" (Doc. 458) are hereby DENIED.**

C.    Plaintiff's Motion to Appoint an Attorney (Doc. 463)

In this motion, Plaintiff requests that the Court appoint counsel to represent her in this case, pointing to her "eligibility" under 28 U.S.C. §1915. She claims that she should be appointed counsel because the judges on the Ninth Circuit "exhibited fierce bias and prejudice" toward her and "disregarded the material facts of the case" and "applied the wrong legal standards."  Doc. 463 at 10.

There is no constitutional right to assistance of counsel in the prosecution of a civil rights action. *Bethea v. Crouse*, 417 F.2d 504, 505 (10th Cir. 1969).  Appointment of counsel to represent an indigent proceeding pursuant to §1915 is a matter of discretion. *See Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994).  The Court considers a variety of factors in determining whether to

---

[3]  Judge Gilliam denied Plaintiff's motion for injunctive relief largely because Plaintiff "proffers no evidence to support her claim and refuses to address the relevant legal standard."  Doc. 451 at 3.  Judge Gilliam also pointed to Plaintiff's language in her declaration that she did not "need to satisfy four stupid and unnecessary elements of the Prima Facie Case in the irrelevant case law *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)." *Id.* Plaintiff is put on notice that in this case, motions she files of a similar caliber will be met with similar rulings by this Court.

appoint counsel, such as: the merit of the litigant's claims, the nature of the factual issues raised, the litigant's ability to present the claims, and the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995).

The Court DENIES Plaintiff's request to have counsel appointed. First, only two claims remain from the many claims first asserted in her complaint. The Court is convinced that, based on the review of the lengthy docket while the case was in the NDC, Plaintiff has shown herself to be capable of representing her legal interests thus far. Second, Plaintiff has already tried to obtain legal representation from no fewer than twenty-five law firms and agencies—all unsuccessful attempts—and the Court sees no point in allowing Plaintiff more time to find an attorney. The case will go forward with Plaintiff representing herself *pro se,* as she has done so since June of 2018 when the complaint was first filed.

**Plaintiff's motion for appointment of counsel is therefore DENIED.**

D.      Plaintiff's Motion for Partial Summary Judgment (Doc. 464)

This motion is STRICKEN. Plaintiff may re-file it as a motion when a case management order is in place, and unless the re-filed version complies with all applicable local rules, it will again be stricken. For example, at 42 pages, the motion exceeds the page limitation for motions under D.N.M.LR-7.5.

E.      Plaintiff's "Notice-Application to Certify that Lawsuit is of General Public Importance" (Doc. 465)

This "Notice" is **STRICKEN** because: (1) it appears to be cumulative of her motion for summary judgment; (2) a request for relief from the Court must be made by *motion,* not a "notice," s*ee* Fed.R.Civ.P. 7(b)(1); D.N.M-LR-Civ. 7.1(a); and (3) the pleading fails to comply with the requirements for summary judgment motions under either the federal or local rules in setting out the pertinent facts and support thereof.

F.     Plaintiff's self-styled "Part 1: "Notice/Statement that Civil Local Rule 56.1(a) of Federal Rules in "Inapplicable to Me." Part 2: Memorandum in Support to My First Motion for Partial Summary Judgment" (Doc. 477)

This motion is DENIED as well for several reasons.  First, Plaintiff claims that her case is exempt from various procedural rules, including Fed.R.Civ.P. 56 because it is a condemnation action and requests only injunctive or other emergency relief.  This representation is false, as the case is and has always been an employment discrimination case, which is subject to Rule 56 as well as local rules governing case management.  *See, e.g.,* D.N.M.LR-Civ. 16.3.

Second, Plaintiff again has violated this Court's local rule D.N.M.LR-Civ.7.1(a) by failing to seek Defendants' concurrence before filing the motion.  *See* Doc. 480 at 1, n.1.

Third, Plaintiff's briefing purports to include the Statement of Material Facts required under the Court's local rules to support Plaintiff's First Motion for Partial Summary Judgment (Doc. 464), which makes this pleading (according to Plaintiff herself) an *additional* summary judgment brief. *See* Doc. 480-1 (e-mail from Plaintiff to defense counsel Lyman stating that "[m]y intention for now is to file the Second Motion for Partial Summary Judgment").  Breaking "what is in reality a single motion for summary judgment into distinct and individual pleadings" is not permitted in this Court. *See Vera v. Rodriguez*, No. CV 16-491 SCY/KBM, 2017 WL 6621048, at *1 (D.N.M. Dec. 27, 2017) (noting that district courts have inherent power to limit successive summary judgment motions and briefs in order to manage their dockets and providing examples of cases where district judges in this district have exercised this power in such situations).  For Plaintiff's benefit, the Court explains its reasons for discouraging such piecemeal litigation:

["Piecemeal litigation"] forces the parties to file multiple motions, responses, and replies, when a single omnibus document would suffice and further causes extra work for this busy Court, which has to read and analyze overlapping and often duplicative arguments." As the Honorable Bruce Black emphasized, "such tactics— which look like transparent attempts to skirt the rules—waste judicial resources, unnecessarily burden the litigants, and ultimately prove counterproductive because

> . . . they create additional haystacks in which courts are obliged to look for the needle."

*See Vera v. Rodriguez*, No. CV 16-491 SCY/KBM, 2017 WL 6621048, at *1 (D.N.M. Dec. 27, 2017) (internal citations and quotations omitted).

As Defendants note, Ms. Drevaleva's abusive practice of filing multiple supplemental briefs led the NDC to order her not to file "[a]dditional briefs beyond the motion, opposition and . . . reply" without first obtaining the Court's leave.  *See* Doc. 415.  Ms. Drevaleva is hereby cautioned that a similar practice here will result in the summary striking of all multiple and/or successive pleadings, as well as briefs containing overlapping or duplicative arguments.  Judge Alsup advised Plaintiff to "take sufficient time to include all arguments that she wishes to raise in the first instance," Doc. 451 at 2, and the Court here advises Plaintiff to do the same.  Failure to do so will have consequences in this District.

Fourth, Plaintiff's summary judgment filings grossly exceed the page limitations of the local rules, and as just noted previously, the initial summary judgment motion alone is over the page limit.  *See* D.N.M.LR-Civ.7.5.  With the additional 64 pages of facts separately filed in Doc. 477, Plaintiff has presented a total of 106 pages for the Court's consideration.  Because the Court has certainly not granted Plaintiff permission to exceed the page limitations set forth in Local Rule 7.5, the Court takes the position that Plaintiff has filed only one summary judgment motion (Doc. 464) which has been denied without prejudice and will be subject to re-filing in accordance with this Court's local rules and once a case management order is in place.  The Court also intends to ignore or strike any pleadings which appear to be attempts by Plaintiff to circumvent compliance with the procedural rules.  *See, e.g.*, *Vera*, 2017 WL 6621048, at *2 (noting that "piecemeal motions which strike the Court as merely attempts to skirt procedural rules, including those providing page limitations, should be disallowed").

11

G.     Motion to Disqualify Assistant AUSA Christine Lyman (Doc. 484)

In this motion, Plaintiff seeks to disqualify AUSA Christine Lyman, claiming that she is unauthorized to practice before this Court, and "committed fraud and multiple felonies" by opposing Plaintiff's motions.  In addition to Ms. Lyman's disqualification, Plaintiff also seeks other remedies, such as criminal penalties for conspiracy, obstruction of justice, and genocide. *See* Doc. 484 at 2-4.

Attorneys are bound by the local rules of the court in which they appear. Because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). Plaintiff's motion is **DENIED** for a variety of reasons.

First, Plaintiff lacks standing to seek disqualification.  Generally speaking, only clients have standing to move to disqualify counsel. *Smith v. TFI Fam. Servs., Inc.*, No. 17-02235-JTM-GEB, 2018 WL 2926474, at *3 (D. Kan. June 8, 2018).  Here, Ms. Drevaleva fails to plausibly demonstrate how Ms. Lyman's representation of Defendants cause her as a plaintiff to suffer any injury-in-fact.  *See O'Hanlon v. AccessU2 Mobile Sols., LLC*, No. 18-CV-00185-RBJ-NYW, 2018 WL 3586395, at *4 (D. Colo. July 26, 2018), *report and recommendation adopted*, No. 18-CV-00185-RBJ-NYW, 2019 WL 1081079 (D. Colo. Jan. 22, 2019) (noting that the "irreducible minimum of standing" requires the plaintiff to prove an injury-in-fact that is "concrete, particularized, and actual or imminent").

Second, some courts grant standing to an opposing party to disqualify counsel "where the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings." *Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046,

1050 (D. Colo. 1999).  Plaintiff points to no such conflict of interest that would "tend to undermine the validity of the proceedings of the case."  *O'Hanlon v. AccessU2 Mobile Sols., LLC*, No. 18-CV-00185-RBJ-NYW, 2018 WL 3586395, at *5 (D. Colo. July 26, 2018), *report and recommendation adopted,* No. 18-CV-00185-RBJ-NYW, 2019 WL 1081079 (D. Colo. Jan. 22, 2019)

Third, even assuming Plaintiff had standing, she offers nothing by way of meritorious argument.  The party seeking disqualification has the burden to establish the grounds for disqualification. *Religious Tech. Ctr. v. F.A.C.T.Net, Inc*., 945 F. Supp. 1470, 1473 (D. Colo. 1996).  Plaintiff seeks disqualification because she never "consented to be represented by the U.S. Department of Justice and particularly by Ms. Christine Lyman." Doc. 484 at 2. However, Ms. Drevaleva offers no legal authority or rule for the proposition that evidence of representation must be provided either to the Court or to opposing counsel.  In other words, Plaintiff offers nothing at all to suggest that the United States Attorney's Office must obtain Ms. Drevaleva's permission or consent before assigning any particular AUSA to a case.  *See HSBC Bank USA, N.A. v. Dela Cuesta*, No. C-11-4584 EMC, 2012 WL 10527, at *1 n.1 (N.D. Cal. Jan. 3, 2012) (noting that "there is no federal rule requiring evidence of representation before an attorney may make an appearance on behalf of a client"). Moreover, the record in this case clearly establishes that the Department of Justice has and continues to represent the Defendants in this case.  Accordingly, the Court accepts defense counsel's representation as an officer of the Court that she is, in fact, authorized to represent Defendants and besides, Plaintiff has no say over which lawyer(s) are selected by the Attorney General or the U.S. attorney to represent an agency of the United States Government.

Fourth, Plaintiff is simply incorrect that Ms. Lyman is engaged in the unauthorized practice of law because she is not admitted to practice law before the state courts of New Mexico. *See* Doc. 484 at 18. This Court's local rules permit admission of attorneys "licensed by the highest court of a state, federal territory, or the District of Columbia." D.N.M.LR-Civ. 83.2(a). In addition, this Court's website also indicates that "[a]ttorneys employed by, or on special assignment for the United States Government may practice before this court in their official capacity as long as they are licensed by, and on active status in any state, federal territory, or the District of Columbia." *See* Admissions, *available at* https://www.nmd.uscourts.gov/admissions (last visited September 7, 2021). Ms. Drevaleva is highly advised and encouraged to become familiar with these rules and website before filing motions that are legally unfounded. Stated another way, Ms. Lyman is authorized to and will be allowed to represent Defendants in this case regardless of whether Plaintiff agrees with Ms. Lyman's representation of Defendants.

Fifth, Plaintiff conflates Ms. Lyman's opposition to her motions with the notion that defense counsel is violating ethical rules. Plaintiff is familiar enough by now—or should be—that defense counsel's job *is* to oppose Plaintiff's motions if Ms. Lyman believes opposition is in the best interest of her client, which is an agency of the United States Government. *See, e.g.*, *Brown v. Marriott Hotel*, 602 F. App'x 726, 727 (10th Cir. 2015) (affirming denial of a motion to disqualify opposing counsel because attempting to dismiss claims and opposing motions did not "violate any ethical rules or justify disqualification from the case").

Sixth—and probably the most disturbing of Plaintiff's arguments—are Ms. Drevaleva's accusations of criminal conduct, including genocide. None of these accusations have any kind of factual footing and thus at best, the Court finds them offensive and frivolous. *See Matter of Lisse*, 921 F.3d 629, 644 (7th Cir. 2019) ("Flippant, unfounded accusations of misconduct and fraud by

opposing counsel and court officials demean the profession and impair the orderly operation of the judicial system."   At worst, the Court would be inclined to consider the appropriateness of sanctions for making such baseless accusations.  *Id.* ("Such behavior warrants punishment.")

**For all these reasons, Plaintiff's motion to disqualify is DENIED.**

H.     <u>Plaintiff's Pro Se Status Does not Give Her License to Abuse the Judicial Process</u>

The Court hereby STRIKES all of Plaintiff's  "Supplements" and "Supplemental Briefs" and "Appendix/Supplements" that were filed since the case's transfer to this District as being cumulative or otherwise violating this Court's local rules.  All such pleadings filed prior to transfer will not be considered by the Court.

The Court will also STRIKE  all supplemental and repetitive filings  ("supplemental briefs," "supplements" and "administrative motions") filed by Plaintiff in the future that are cumulative or overlap with previous filings; and Plaintiff is hereby put on notice that the Court will NOT CONSIDER  pleadings that include old arguments—notwithstanding the inclusion of new arguments in that pleading.

**III.   General Notice to Plaintiff Proceeding Forward With this Case**

This section of the Court's Opinion is directed toward Ms. Drevaleva in particular and she is advised as follows:

A.     <u>This Court's Inherent Right to Manage Its Docket</u>

Plaintiff's lawsuit is now being litigated in this District, which has long insisted that "*pro se* parties follow the same rules of civil procedure as any other litigant." *In re Young*, No. 1:14-cv-01143-JB-LF, 2015 WL 11718113, at *1 (D.N.M. Oct. 28, 2015), *report and recommendation adopted*, 546 B.R. 218 (D.N.M. 2015); *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008) ("*Pro se* status does not excuse the obligation of any litigant to comply with the fundamental

requirements of the Federal Rules of Civil and Appellate Procedure"); *Brick v. Estancia Mun. Sch. Dist.*, No. 1:20-CV-00881-KK, 2020 WL 5204294, at *3 (D.N.M. Sept. 1, 2020).

Ms. Drevaleva certainly has a right of access to the courts, but that right "is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006). The Court has "the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Id.* "Even onerous conditions may be imposed upon a litigant as long as they are designed to assist the court in curbing the particular abusive behavior involved, except that they cannot be so burdensome as to deny a litigant meaningful access to the Courts." *Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013).

The United States District Court for the District of New Mexico is one of the five southwest border courts in the United States.  Consequently, this District has had and continues to have a chronic overload of criminal, border related cases resulting in a large percentage of Defendants charged with criminal offenses having to remain in custody pending trial or case resolution. Additionally, the United States Congress has authorized seven district judge positions for this District and for the past two years, there have been 2 to 3 judicial vacancies and as of the date of the filing of this opinion, the District of New Mexico has two judicial vacancies.  When an individual is charged with a felony offense and his or her liberty interests are at stake, the Court has to give priority to criminal cases over civil cases.  Consequently, while the Court understands and recognizes that this case is important to Ms. Drevaleva, this case is not the only important case before the undersigned judge and in fact, priority must and will be given to pending criminal cases because, as the Court previously stated, incarcerated criminal defendants are given a higher priority over civil litigants because the liberty interests of the criminal defendants are at stake. The ongoing

COVID-19 pandemic presents additional challenges for the Court in that there is currently a backlog of criminal defendants awaiting trial and these cases involving criminal defendants must be given priority over pending civil cases.

As a result of the demands of this Court's caseload, the Court has a strong interest in managing its docket and minimizing the impact of frivolous or meritless actions on its resources. *Mallgren v. United States*, No. 16CV1285 JAP/KBM, 2016 WL 9725195, at *1 (D.N.M. Dec. 12, 2016). In its efforts to mange its docket, the Court may impose sanctions in the form of **filing restrictions** on *pro se* parties who misuse court privileges. *See Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) ("[E]ven onerous conditions may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved" as the conditions imposed to not deny a litigant meaningful access to the court); *Sieverding v. Colo. Bar Ass's*, 469 F.3d 1340, 1343 (10th Cir. 2006). Thus this Court has "the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Landrith v. Schmidt,* 732 F.3d 1171, 1174 (10th Cir. 2013).

B.      Court's Notice to Plaintiff Regarding Compliance With Federal and Local Rules

Plaintiff's continuous filing of frivolous and non-compliant pleadings in the NDC showed a complete disregard of that court's orders and procedural rules. Despite receiving clear directives from the Ninth Circuit and from Judge Alsup in the NDC, Plaintiff did not alter her course in either the frequency or nature of her filings throughout its litigation there. *See, e.g.,* Doc. 193, 349, 368 and 451 (orders relating to Plaintiff's unnecessary filings).

In addition to filing a motion to disqualify Ms. Lyman from this case (which the Court has denied with prejudice), Ms. Drevaleva previously made a habit of attempting to disqualify others associated with her case while it was being litigated in California. She filed two motions to

disqualify AUSA Kimberly Robinson which were summarily denied by Judge Alsup. (Docs. 349, 354).  Plaintiff also moved to disqualify Judge Alsup because "he cruelly tortured and humiliated me" (Doc. 318) and Magistrate Judge Spero because he "wanted to continue torturing me with pleasure like both Alsup and Robinson did" (Doc. 369). As mentioned previously, both Judge Alsup and Judge Spero recused from the case.  See Doc. 487 at 2.

This practice of seeking disqualification and filing other frivolous motions has earned Ms. Drevaleva the dubious distinction of being declared a vexatious litigant in California. *See Drevaleva v. Alameda Health Sys*., No. A158862, 2020 WL 5790940, at *1, 4-5 (Cal. Ct. App. Sept. 28, 2020); *see also* Vexatious Litigant List (current through Aug. 1, 2021) at 21, *available at* https://www.courts.ca.gov/documents/vexlit.pdf (last visited Sept. 7, 2021).

Plaintiff's rash of repetitive filings following transfer of the case to this District indicates that she has no intention of changing her abusive litigation behavior while the case is being litigated in this Court.   Moving forward, the Court expects and will assume that Plaintiff will take the time to become familiar with this Court's local rules and the federal procedural rules.  Specifically, the Court recommends that Plaintiff familiarize herself with Rule 11 of the Federal Rules of Civil Procedure, which requires parties (or their attorneys, for those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court.  *See Marley v. Wright,* 968 F.2d 20, *2 (10th Cir. 1992). A person's actions must be objectively reasonable in order to avoid Rule 11 sanctions. *See Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988).

Ms. Drevaleva's status as a *pro se* party does not relieve her of this responsibility, but the standard remains one of objective reasonableness under the circumstances, *Adamson,* 855 F.2d at 670, and this standard applies whether the person being sanctioned is a pro se litigant, an attorney,

or both. *Wesley v. Don Stein Buick, Inc.*, 184 F.R.D. 376, 378 (D. Kan. 1998); *see also* Fed.R.Civ.P. 11 advisory committee notes (1983 amendment) ("[T]he court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations").   The Court finds that Ms. Drevaleva's blatant and factually unfounded accusations of "genocide" against defense counsel Christine Lyman comes perilously close to a Rule 11 violation.   Plaintiff claims that Ms. Lyman "willfully subjected me to irreparable body injury in a form of preventing me from continuing my treatment of infertility." Doc. 484 at 26.   Accusing someone of "genocide" who purportedly thwarted access to fertility treatment is not objectively reasonable, even for a non-attorney.   Going forward, the Court will not tolerate outbursts attacking the opposing party unless they are supported by some indicia of evidence.

**Plaintiff is hereby given formal notice that a continuation of non-compliance with the federal procedural rules and this Court's local rules and orders will result in quick action by the Court in exercising its right to manage its docket.   Such action may take the form of filing restrictions or sanctions to include dismissal of the case.**

C.      Cessartion of *Ex Parte* Communications With Court

Soon after this case was transferred to this District, Ms. Drevaleva proceeded to bombard chamber with *ex parte* communications, which are prohibited. *See* Court's Guide for Pro Se Litigants  at 11 (prohibiting *pro se* parties from all *ex parte* communication with the judge or judge's staff); *Mallgren v. Thomas*, No. 16CV1256 JCH/KBM, 2016 WL 9725194, at *1 (D.N.M. Dec. 7, 2016.   These communications are apparently intended to coerce the Court into ruling on her pending motions. They come in the form of phone calls (her tone on these calls is belligerent and abusive) and e-mails, and they occur with a frequency (several daily) which amounts to, in the Court's estimation, harassment.   In one e-mail, Plaintiff insists that the Court provide her with a

time frame for rulings on those motions, and threatens to file a motion to disqualify the undersigned and file a writ of mandamus if chambers does not respond to the e-mail by providing her with a time frame for a ruling on her motions. *See* **Court's Exhibit 1.  Plaintiff is put on notice that the Court will get to her motions when the Court is ready to rule on said motions and not before then.**

In this Order, the Court has denied Ms. Drevaleva's motion for permission to file electronically. Allowing Plaintiff the privilege will not be considered at all by the Court  since Plaintiff continues to hound chambers staff with *ex parte* communications.

**THEREFORE,**

**IT IS ORDERED** that:

(1) **This case is hereby STAYED and referred to the Magistrate Judge assigned to the case** to schedule a case management hearing and discuss relevant scheduling deadlines with the parties;

(2) Until a scheduling order is in place following the case management hearing, **parties are precluded from filing any documents in this case from the date this Order is entered until a scheduling order is in place allowing such filing.  Any filings made contrary to this Order shall be STRICKEN**;

(3) The Court has ruled on the following motions:

- Plaintiff's Motion for Permission for Electronic Case Filing **(Doc. 456)** is DENIED;

- Plaintiff's motion requesting an "expedited trial" and a "permanent injunction" **(Doc. 458)** IS DENIED;

- Plaintiff's motion for appointment of counsel **(Doc. 463**) is DENIED;

- Plaintiff's Motion for Summary Judgment **(Doc. 464)** is STRICKEN;

- Plaintiff's Notice/Application to Certify That Lawsuit is of General Public Importance **(Doc. 465)** is STRICKEN;

- Plaintiff's "Part 1: "Notice/Statement that Civil Local Rule 56.1(a) of Federal Rules in "Inapplicable to Me." Part 2: Memorandum in Support to My First Motion for Partial Summary Judgment" **(Doc. 477)** is DENIED with prejudice; and

- Plaintiff's Motion to Disqualify Ms. Lyman **(Doc. 484)** is DENIED with prejudice.

(4) The Court has STRICKEN all of Plaintiff's "Supplements," "Supplemental Briefs" and "Appendix/Supplements."   Future pleadings in these categories shall be STRICKEN or NOT CONSIDERED. The Court hereby adopts and reiterates Judge Alsup's directive to Ms. Drevaleva that she "should take sufficient time to include all arguments that she wishes to raise in the first instance. . . ." Doc. 171 at 2.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE