IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATYANA EVGENIEVNA DREVALEVA,

      Plaintiff,

vs.                                                                             No. 21-cv-761 WJ-JFR

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, ET AL.

      **Defendants.**

### MEMORANDUM OPINION AND ORDER
### PROVIDING PLAINTIFF SECOND AND FINAL NOTICE
### REGARDING VIOLATIONS OF COURT ORDER AND RULES

THIS MATTER comes before the Court *sua sponte*, following the Court's recently filed Memorandum Opinion (Doc. 491) and the filing of the Court's Initial Scheduling Order (Doc. 497), regarding Plaintiff's recent violations of both.

Ms. Drevaleva, who is proceeding *pro se,* is suing Defendants for violations of Title VII and the Rehabilitation Act of 504. This case was transferred from the Northern District of California on August 13, 2021, *see* Doc. 453, where she has been declared as a "vexatious litigation"—and is fast becoming worthy of that moniker in this District as well. Shortly after the transfer, the Court issued a Memorandum Opinion and Order ruling on Plaintiff's pending motions, and also gave Plaintiff formal notice regarding her of the potential consequences of failing to comply with this Court's orders and rules. The Court's message to Plaintiff was clear:

> Parties are precluded from filing any documents in this case from the date this Order is entered until a scheduling order is in place allowing pleadings to be filed. Any filings made contrary to this Order shall be immediately STRICKEN from the record.

1

Doc. 49, pp. 5 & 20.  The Court also admonished Plaintiff for continuing to communicate with chambers *ex parte* by e-mail and phone and denied her electronic filing privileges based on her past and current abusive filing conduct:

> Thus, Plaintiff is hereby advised that until the Court has the assurance by way of her litigation conduct that she will comply with this Court's local rules, Plaintiff will not be allowed to participate in electronic filing, as the Court will not grant her license to abuse the privilege at the outset.

Doc. 491 at 6.

## I.  Continuing Violations After Stay Was Imposed

Immediately after the Stay was imposed on September 14, 2021, and in flagrant violation of the Court's stay and its abundantly clear directives, Ms. Drevaleva proceeded to violate it in several ways.

### A.  Filing of Pleadings and Motions

| Date | Link | Description |
| --- | --- | --- |
| 09/14/2021 | view | **[COURT ONLY]** (Court only) ***Set STAYED Flag pursuant to Order 491 . (cmm) (Entered: 09/14/2021) |
| 09/17/2021 | view492 | REPLY to Response to 484 Motion to Disqualify Counsel filed by Tatyana Evgenievna Drevaleva. (cmm) (Entered: 09/17/2021) |
| 09/17/2021 | view493 | MEMORANDUM in Support re 492 Reply to Response to Motion to Disqualify filed by Tatyana Evgenievna Drevaleva. (cmm) (Entered: 09/17/2021) |
| 09/17/2021 | view494 | NOTICE of Briefing Complete by Tatyana Evgenievna Drevaleva re 484 MOTION to Disqualify Counsel filed by Tatyana Evgenievna Drevaleva. (cmm) (Entered: 09/17/2021) |
| 09/17/2021 | view495 | FIRST MOTION for PERMISSION TO EXCEED Page LIMITATIONS by Tatyana Evgenievna Drevaleva. (cmm) (Entered: 09/17/2021) |
| 09/17/2021 | view496 | FIRST MOTION for Permission to File More Motions for Summary Judgment or, As an Alternative, to File a Supplemental Brief in Support to My First Motion for Partial Summary Judgment by Tatyana Evgenievna Drevaleva. (cmm) (Entered: 09/17/2021) |

All of these filings violated the Court's stay order and were summarily stricken.  Doc. 498.

### B.  Continuing E-Mail Communications with Court

On September 15th and 16th, Ms. Drevaleva also picked up where she left off with her daily e-mail communications with the Court. This time, however, Plaintiff copied defense counsel on the e-mails—no doubt under a misguided perception that doing so would successfully circumvent the Court's restrictions regarding *ex parte* communications. The Court assures Plaintiff that it does not, for several reasons. These e-mails still constitute communications made to the Court off the record and as such have no relevance to the lawsuit. Based on the substance and tone of those e-mails, Plaintiff sole objective was to vent displeasure at the Court's rulings which are not favorable to her, particularly the denial of electronic filing privileges. These off-the-record communications force the Court to waste its time having to address them, taking valuable time from other cases that need the Court's attention. Also, under this Court's local rule 5.1(a), "[f]axing, email or any other form of electronic submission does not constitute electronic filing and will not be accepted by the Clerk." Thus, sending these emails to the Court—even *after* Plaintiff was formally provided notice regarding compliance with the Court's Orders and Rules—still violates those very Orders and Rules, regardless of whether Plaintiff copies defense counsel on the e-mails.

      C.      <u>E-Mails to Magistrate Judge Chambers With Hundreds of Exhibits</u>

On September 17, 2021, United States Magistrate Judge John F. Robbenhaar, who is assigned to this case, set an initial scheduling order on September 17, 2021, ordering parties to submit a Joint Status Report by October 25, 2021. Doc. 497.

On September 25, 2021, Plaintiff sent five e-mails to Judge Robbenhaar's chambers, with literally hundreds of pages of attachments (*by exact page count, 1531 pages total*), copied to opposing counsel and chambers of the undersigned—ostensibly as part of her "meet and confer" with opposing counsel for submission of the Joint Status Report. However, despite the Court's previous caution that Plaintiff must become familiar with this Court's rules

and comply with this Court's Orders, Ms. Drevaleva stubbornly refuses to do so. Her very conduct in sending these e-mails to Judge Robbenhaar's chambers violates both the local rules and the Court's Initial Scheduling Order several times over:

(1) Plaintiff has not complied with this Court's local rule governing the preparation and submission of the Joint Status Report ("JSR"), or with the Court's Initial Scheduling Order. This Court's local rule states that:

> A Joint Status Report form is available at the Clerk's office and **online.** Following the FED. R. CIV. P. 26(f) **meet-and-confer conference**, the parties must complete the Joint Status Report. The parties must file the completed Report at least seven (7) days before the scheduling conference, or as ordered by the Court.

D.N.M.LR-Civ. 16.1 (emphasis added). Instead of clicking on the highlighted link to obtain and complete the form (available in the online version of the local rules), Ms. Drevaleva sent to Judge Robbenhaar's chambers e-mail hundreds upon hundreds of pages of what is purportedly the appeal record from the Ninth Circuit and hundreds of pages of "objections" to "facts" (which have an unknown origin). The Court's initial scheduling order repeats the exact same requirements for submission of the JSR:

> The parties, appearing through counsel or *pro se*, will "meet and confer" no later than Thursday, October 14, 202, to discuss the nature and basis of their claims and defenses, the possibility of a prompt resolution or settlement, and to formulate a provisional discovery plan. Fed. R. Civ. P. 26(f). **The parties will cooperate** in preparing a *Joint Status Report and Provisional Discovery Plan* ("JSR") **which follows the sample JSR available at the Court's website, www.nmd.uscourts.gov.** The parties will fill in the proposed dates, bearing in mind that the time allowed for discovery is generally 120 to 150 days from the date of the Rule 16 Initial Scheduling Conference. The Court will determine actual case management deadlines after considering the parties' requests.

Doc. 497 at 1 (emphasis added).

(2) Plaintiff was supposed to "meet and confer" or otherwise "cooperate" with the opposing party in preparation of the JSR, but there is no indication at all that Ms. Drevaleva attempted to do so with the opposing party.

(3) There is no language in either the Court's local rules or the Court's initial scheduling order remotely suggesting that a "meet and confer" session can be accomplished by deluging Judge Robbenhaar's chambers with e-mails and hundreds of exhibits.

(4) Other than filling in certain dates for discovery needs, the JSR mainly requires Plaintiff to list her "Stipulations" and "Contentions" related to the lawsuit. Instead, Plaintiff chose to ignore the Court's rule and Order by circumventing those requirements and dumping hundreds of pages of unrelated matter on the Court.

D.     Certificates of Services

On September 27, 2021, Plaintiff filed twenty-three (23) Certificates of Services (Docs. 499 to 521) which appear to put additional parties on notice that she intends to add their names to her Complaint and advising them of certain obligations pursuant to the ISO (including as parties the district judge presiding over this lawsuit while it was being litigated in the Northern District of California, and a federal magistrate judge involved in the litigation of one of Plaintiff's many other related cases, *see* Docs. 499 and 500).

The Court will STRIKE those documents because they violate the Court's stay Order and have absolutely no relevance to the information required in the preparation of a Joint Status Report. For example, while the JSR form asks for information pertaining to "amendments to pleading and joinder of parties," it does not call for (or allow) the actual *addition* of parties. Nor is a JSR form or a certificate of service the proper way to add parties.[1]  While Ms. Drevaleva is

---

[1] Even assuming the stay was lifted and Plaintiff were allowed to add parties through proper procedure, she would need to formally amend her complaint and then effect service on all the parties she has included in her certificates of

afforded a liberal construction of her pleadings as a *pro se* litigant, *see Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), she is expected to be familiar with the rules that will govern her case and comply with the plain language of Court Orders, *see Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

Given Plaintiff's blatant disregard for carrying out *any* of the requirements related to the submission of the Joint Status Report, the Court is convinced that Ms. Drevaleva's abusive pattern of behavior is intentional. Lest there be any question regarding the degree of intentional abuse and willful failure to comply with this Court's rules and Orders, the Court attaches in PDF form Ms. Drevaleva's latest e-mails to Judge Robbenhaar's chambers, including attachments. **See Court's Exhibit 1 (PDF version of omnibus compilation of Plaintiff's e-mails and attachments).**

The Court advises Plaintiff here and now that continuing this pattern of conduct will not persuade the Court to exempt her from the compliance all litigants must show. Instead, it will accomplish only one thing: the imposition of SANCTIONS by the Court, MOST LIKELY DISMISSAL of her lawsuit. The Court also advises Plaintiff that this Order will serve as her LAST NOTICE before the Court does so, should she continue to ignore Court rules and Orders. The undersigned has already expended an inordinate amount of time exercising damage control to the rampant disregard shown by Ms. Drevaleva in her filing practices to this Court's rules and orders.

Next, for Plaintiff's benefit, the Court provides some background on the Court's authority to impose sanctions, including dismissal of a case.

**II.      Court's Authority to Impose Sanctions, Including Dismissal**

---

services." However, none of these parties have been added or properly served, nor can Plaintiff do so during the stay imposed by the Court.

District courts have the power to impose sanctions, including dismissal, from various sources.

A court has an inherent power to regulate the activities of vexatious or abusive litigants after appropriate notice is given. *Ayala v. Holmes*, 29 F. App'x 548, 551 (10th Cir. 2002). In *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991), the United States Supreme Court stated that the court's inherent powers are governed not by rules or statutes but by the control necessarily vested in courts to manage their own affairs in order to achieve the orderly and expeditious disposition of cases. *Id*. at 49. *Chambers* recommended that the court follow the statutes and rules when they are applicable, but when "in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id*. at 50.

Rule 11(b) of the Federal Rules of Civil Procedure states that, for every pleading, filing, or motion submitted to the Court, an attorney or unrepresented party certifies that it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that all claims or "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that factual contentions have evidentiary support.

Under Rule 11(c)(3), the Court is empowered to order a party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." If, after notice and opportunity to respond, a court determines that a party has violated Rule 11(b), it may impose sanctions. *See King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018). These sanctions must be limited to what can deter future bad conduct. *Id.* The imposition of sanctions under Rule 11 is within the discretion of the court, *id.* at 1147, and one available sanction is dismissal. *Id.* at 1149-50.

Although dismissal is an "extreme sanction" not "to be taken lightly," it is a permissible option, because "district court judges need to be able to control their courtrooms." *King v. Fleming*, 899 F.3d 1140, 1149 (10th Cir. 2018). The Tenth Circuit reasoned that, "because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Dismissal is "appropriate only when the aggravating factors like bad faith or willfulness outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.* However, "willful failure" can be "any intentional failure" and no *wrongful* intent need be shown. *In re Standard Metals corp.,* 817 F.2d 625, 628 (10th Cir. 1987). In determining what sanctions to impose, the Court should consider factors such as:

(1) the degree of actual prejudice to the defendant;

(2) the amount of interference with the judicial process;

(3) the culpability of the litigant;

(4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and

(5) the efficacy of lesser sanctions.

965 F.2d at 921. The first three factors aid the Court in deciding whether to apply any sanction. *King v. Fleming*, 899 F.3d 1140, 1150, n.15 (10th Cir. 2018). The last two inform on whether dismissal or a lesser sanction is appropriate. *Id.*, cited in *Jaiyeola v. Garmin Int'l, Inc.*, No. 2:20-CV-02068-HLT, 2021 WL 2515023, at *13 (D. Kan. June 18, 2021)

The *Ehrenhaus* case dealt with sanctions for misconduct under Rule 37 relative to the discovery process, but involuntary dismissals for failure to comply with court orders are determined by reference to same criteria as dismissals for discovery violations – in other words, applying the *Ehrenhaus* factors. See *Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994). For

example, in *Jones v. Thompson*, the district court used those factors to dismiss a plaintiff's complaint with prejudice "for noncompliance with court orders." 996 F.2d 261, 264 (10th Cir.1993). The Tenth Circuit has recognized that these factors are also appropriately considered for cases arising under Rule 11 or a court's inherent power to sanction. *King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018), cited in *Jaiyeola v. Garmin Int'l, Inc.*, No. 2:20-CV-02068-HLT, 2021 WL 2515023, at *13 (D. Kan. June 18, 2021).

**THEREFORE,**

(1) **The Court hereby STRIKES Documents 499-521** because they violate the Court's temporary stay imposed in this case and have no relevance to the clear requirements set forth in the Court's rules and scheduling order regarding the preparation of the Joint Status Report; and

(2) **Plaintiff is hereby (and again) advised that this Order serves as her FINAL WARNING that any subsequent violation of this Order or of other Court orders and rules will result in SANCTIONS, INCLUDING DISMISSAL OF HER CASE WITH PREJUDICE, WITHOUT FURTHER NOTICE.**

**IT IS SO ORDERED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE