IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATYANA EVGENIEVNA DREVALEVA,

    Plaintiff,

vs.                                                                             No. 21-cv-761 WJ-JFR

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## IMPOSING SANCTION OF DISMISSAL WITH PREJUDICE

    THIS MATTER comes before the Court *sua sponte*. Plaintiff Tatyana Drevaleva, who is proceeding *pro se,* is suing Defendants for violations of Title VII and the Rehabilitation Act of Section 504. The case was transferred from the Northern District of California ("NDC") on August 13, 2021, *see* Doc. 453, where Plaintiff was declared a "vexatious litigant." It was apparent soon after transfer of the case that Plaintiff continued the same disregard for court orders and rules in this District as well. *See* Doc. 491 at 1.[1] Despite two formal warnings by this Court and after having been given several opportunities to fulfill her responsibilities as a *pro se* litigant, Ms. Drevaleva continues to show a blatant indifference to those responsibilities as well as a blatant disregard for court orders and the Federal Rules of Civil Procedure and the local rules of court in this District. Consequently, the Court has determined that the appropriate course of action is to dismiss the above captioned lawsuit with prejudice.

## BACKGROUND

    ***First Warning:***

---

[1] This Court summarized Ms. Drevaleva's abusive litigation practices in the Northern District of California in its previous opinion. *See* Doc. 491 at 1-4.

On September 14, 2021, following transfer of the case from the NDC, this Court issued a Memorandum Opinion and Order that:

- ruled on Plaintiff's pending motions (either striking or denying them);

- entered a stay in the case and advised Plaintiff that "[a]ny filings made contrary to this Order shall be immediately STRICKEN from the record."  Doc. 491 at 6 and 20;

- admonished Plaintiff for continuing to communicate with chambers *ex parte* by e-mail and phone; and

- denied Plaintiff's request for electronic filing privileges based on her past and current abusive filing conduct.

Doc. 491.  The Court also gave Plaintiff formal notice regarding potential consequences of failing to comply with this Court's orders and rules:

> Plaintiff is hereby given formal notice that a continuation of non-compliance with the federal procedural rules and this Court's local rules and orders will result in quick action by the Court in exercising its right to manage its docket. Such action may take the form of  filing restrictions **or sanctions to include dismissal of the case.**

Doc. 491 at 19 (emphasis added).

After the Court filed its decision and imposed a stay on the case, Ms. Drevaleva again e-mailed chambers (only this time copying opposing counsel) mainly to express her annoyance with the Court's rulings (particularly with its denial of electronic filing privileges) and to "clarify"  issues that the Court did not understand. Plaintiff also stated that she would file  a petition to the Tenth Circuit to disqualify the undersigned and a writ of mandamus if she did not receive electronic filing privileges.  *See* Doc. 522-1 (e-mails dated September 15th and 16th, 2021).

***Second (and Final) Warning:***

On September 17, 2021, the United States Magistrate Judge assigned to this case, John F. Robbenhaar, set a Scheduling Conference for November 4, 2021 and issued an Initial Scheduling Order describing in detail the requirements parties must follow for the preparation of a Joint Status Report ("JSR"). Instead of following any of those requirements (and under the obvious pretext of satisfying the "meet and confer" requirement prior to the submission of a JSR), Ms. Drevaleva bombarded Judge Robbenhaar's chambers with e-mails to which she attached well over a thousand pages of attachments and exhibits. At the same time, she filed over twenty "Certificates of Service" which appear to put additional parties on notice that she intends to add their names to her complaint (including the district judge and magistrate judge presiding over the litigation of her other cases) and to advise them of certain obligations pursuant to the initial scheduling order.

The Court addressed Plaintiff's abusive pattern of conduct in a second Memorandum Opinion and Order, noting that the e-mail dumping of thousands of pages of irrelevant material and the filing of inappropriate pleadings continued to be in violation of the Court's Orders and rules, and that through such conduct, Plaintiff showed that she had absolutely no intention of following the requirements set forth in the Initial Scheduling Order or the related local rule:

> There is no language in either the Court's local rules or the Court's initial scheduling order remotely suggesting that a "meet and confer" session can be accomplished by deluging Judge Robbenhaar's chambers with e-mails and hundreds of exhibits.

Doc. 522 at 5. The Court struck all 23 noncompliant Certificates of Services and again issued a clear and formal warning to Plaintiff, hoping to curb Ms. Drevaleva's persistent flouting of her responsibilities as a litigant:

> Plaintiff is hereby (and again) advised that this Order serves as her FINAL WARNING that any subsequent violation of this Order or of other Court orders

and rules will result in SANCTIONS, INCLUDING DISMISSAL OF HER CASE WITH PREJUDICE, WITHOUT FURTHER NOTICE.

Doc. 522 at 9.

*Plaintiff's Continued Violations After Final Warning*

On October 14, 2021, Ms. Drevaleva e-mailed Judge Robbenhaar's chambers again, advising that the parties had met and conferred and stated as follows:

To the Court.

The Parties in case No. 1:21-cv-00761-WJ-JFR exchanged the "meet and confer" statements.
Now, it is my responsibility to file our writings with the U.S. District Court for the District of New Mexico.
Previously, the Court filed over 1500 pages of my Excerpts of the Record, Volumes 1, 2, 3, and 4 in Appeal No. 198-16395 and Plaintiff's Statement of Facts, Part 1, see Doc. No. 522-1. I am reminding that I **emailed** all these documents to the email address of the Hon. Judges Johnson and Robbenhaar.
I am respectfully asking the Court's permission for me **to email** the "meet and confer" session to the Court because it is over 600 pages, and currently I don't have money to print out these documents and to mail them to the U.S. District Court for the District of New Mexico.
Moreover, I don't want to leave my elderly client alone for another half of the day in order to go to Oakland and to print out these documents.
Please, allow me to send these documents to the email addresses of the Hon. Judges Johnson and Robbenhaar.
Moreover, by allowing me to email over 600 pages to the Court, you will relieve the Clerks from the necessity to manually scan all these 600 pages and to file them.
Please, let me know whether I can email the documents to the Court as soon as you can.

Thank you,
Respectfully,
Tanya.

Notably, Plaintiff's e-mail incorrectly states Ms. Drevaleva "filed" over 1500 pages of the appeal record by sending them to chambers e-mail, when they were actually found to violate the Court's order related to preparation of the JSR:

> . . . Other than filling in certain dates for discovery needs, **the JSR mainly requires Plaintiff to list her "Stipulations" and "Contentions" related to the lawsuit**. Instead, Plaintiff chose to ignore the Court's rule and Order by circumventing those requirements and dumping hundreds of pages of unrelated matter on the Court.

Doc. 522 at 5 (emphasis added).

In addition, four days later—and most likely because she did not get any response to her e-mail from the Court—Ms. Drevaleva shipped a box of documents to the Clerk's Office which appear to be the documents related to her portion of the JSR (and which she claimed in her e-mail that she could not afford to ship). The FedEx shipping label on the box shows a ship date of October 18, 2021. The box itself is 12.5 inches long, 10.75 inches high and 8.5 inches wide and weighs 14 pounds, 9 ounces including the over 5-inch stack of papers inside the box.

The Court's previous Order was sufficiently clear that submitting hundreds of pages of documents does *not* comply with the Court's Order to present her "Stipulations" and "Contentions" related to this lawsuit. On its face, Plaintiff's e-mail is a request for permission to e-mail hundreds of documents that she cannot afford to send by postal mail but it is unmistakably a polite, yet determined refusal to conform to the Court's orders and rules. Then, not getting a response from the Court to her e-mail, Plaintiff went ahead and shipped the documents, still ignoring the Court's directives related to proper submission of a JSR.

Case 1:21-cv-00761-WJ-JFR   Document 526   Filed 11/02/21   Page 6 of 14

Thus, despite the Court's express and final warning, Plaintiff again snubs Court orders. Ms. Drevaleva's insistence on doing things her own way instead of complying with what the Court needs her to do in order to resolve this civil matter efficiently indicates that nothing less than dismissal is suitable.

## DISCUSSION

In its most recent warning to Plaintiff, the Court provided information regarding its authority to impose sanctions, including dismissal of a case—and the Court now addresses the relevant factors when considering dismissal as a form of sanctions.

A court has an inherent power to regulate the activities of vexatious or abusive litigants after appropriate notice is given. *Ayala v. Holmes*, 29 F. App'x 548, 551 (10th Cir. 2002). In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the United States Supreme Court stated that the court's inherent powers are governed not by rules or statutes but by the control necessarily vested in courts to manage their own affairs in order to achieve the orderly and expeditious disposition of cases. *Id*. at 49. *Chambers* recommended that the court follow the statutes and rules when they are applicable, but when "in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id*. at 50.

Although dismissal is an "extreme sanction" not "to be taken lightly," it is a permissible option, because "district court judges need to be able to control their courtrooms." *King v. Fleming*, 899 F.3d 1140, 1149 (10th Cir. 2018). The Tenth Circuit reasoned that, "because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920

6

(10th Cir. 1992).[2] Dismissal is "appropriate only when the aggravating factors like bad faith or willfulness outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.* However, "willful failure" can be "any intentional failure" and no *wrongful* intent need be shown. *In re Standard Metals corp.,* 817 F.2d 625, 628 (10th Cir. 1987). In determining what sanctions to impose, the Court should consider factors such as:

(1) the degree of actual prejudice to the defendant;

(2) the amount of interference with the judicial process;

(3) the culpability of the litigant;

(4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and

(5) the efficacy of lesser sanctions.

965 F.2d at 921. The first three factors aid the Court in deciding whether to apply any sanction. *King v. Fleming*, 899 F.3d 1140, 1150, n.15 (10th Cir. 2018). The last two inform on whether dismissal or a lesser sanction is appropriate. *Id.*, cited in *Jaiyeola v. Garmin Int'l, Inc.*, No. 2:20-CV-02068-HLT, 2021 WL 2515023, at *13 (D. Kan. June 18, 2021). This list of factors "is not exhaustive, nor are the factors necessarily equiponderant." *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, 291 F.R.D. 638, 643 (D.N.M. 2013) (citing *Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.,* 70 F.3d 1172, 1174 (10th Cir.1995).

**I.       Degree of Actual Prejudice to Defendant**

---

[2] The *Ehrenhaus* case dealt with sanctions for misconduct under Rule 37 relative to the discovery process, but the Tenth Circuit has recognized that the factors set forth in *Ehrenhaus* are also appropriately considered for cases arising under Rule 11 or a court's inherent power to sanction. *See King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018); *Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994); *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (using *Ehrenhaus* factors to dismiss a plaintiff's complaint with prejudice "for noncompliance with court orders." 996 F.2d 261, 264 (10th Cir. 1993)).

The Court's first Memorandum Opinion and Order ("First Opinion"), following transfer of the case to this district, provided an overview of the case while it was in the Northern District of California ("NDC"). The Court described how the course of litigation (up to almost 500 docket entries at the time the case was transferred here) was driven largely by Plaintiff's filings, most of which were found to be unnecessary and frivolous by United States District Judge William Alsup, who presided over the case in the NDC. *See* Doc. 491 at 5. Ms. Drevaleva continued to ignore the court's cautions about complying with court rules and avoiding frivolous filings. Doc. 491 at 5-6 (noting that "within five months after receiving that directive from Judge Alsup [to discontinue filing "supplementary materials"], Plaintiff continued to file them). Defendants, of course, were bound to consider and respond to Plaintiff's filings to fulfill their responsibilities as opposing parties, regardless of whether those filings were unnecessary or frivolous.

Here as well, Defendants are obligated to consider Ms. Drevaleva's filings, including motions that were pending upon transfer here—and they would have had to address the merits of the voluminous appeal record sent to Judge Robbenhaar as well as the hundreds of pages of documents Plaintiff attempted to submit for her portion of the JSR—had the Court not stricken the filings or otherwise found them to be noncompliant. *See* Doc. 491 at 20, Doc. 522 at 5. When one party follows the rules and the other does not, the compliant party is usually prejudiced. Here, Defendants have had to waste their time and resources addressing matters that they would not have to if Plaintiff just followed the rules.

Many of Plaintiff's filings can be described as nothing short of vexatious. As noted in the Court's First Opinion, Ms. Drevaleva "has made a habit of attempting to disqualify others

associated with her case while it was being litigated in California [including district and magistrate judges]" and has been declared a "vexatious litigant" in that District. Doc. 491 at 17-18. Judge Alsup summarily denied two motions filed by Plaintiff to disqualify defense counsel at that time, and this Court recently denied Ms. Drevaleva's motion to disqualify current counsel for Defendant, AUSA Christine Lyman, finding it to be completely meritless. *Id.* In one of her "arguments" in that motion, Plaintiff accused Ms. Lyman of "genocide" which the Court found "offensive and frivolous" and coming "perilously close to a Rule 11 violation." *Id.* at 19. Defendants were still required to address the matter and respond to it.

For these reasons, the Court finds that Defendants are prejudiced by Plaintiff's conduct and that this factor weighs heavily in favor of imposing sanctions. Plaintiff's insistence on filing what she wants and how she wants, causes Defendants to have to deal with frivolous matters that are distracting, time-consuming and expensive and interferes with their ability to defend themselves in this case. Moreover, there is no sign that Ms. Drevaleva will change course, and every indication is that she will continue to try and find ways around the Court's orders and rules.

As a result, the Court finds that Defendants will continue to be prejudiced if the case is permitted to proceed.

## II.   Amount of Interference With Judicial Process

The second factor considers the interference with the judicial process. The Court noted in its Memorandum Opinion and Order of September 28, 2021 ("Court's Second Opinion") that:

> Plaintiff has engaged in frequent and repetitive filings that have consumed an inordinate amount of the Court's limited time and resources.

Doc. 522 at 3.  The Court explained to Plaintiff that her conduct is particularly disruptive in the United States District Court for the District of New Mexico because of this District Court's chronic overload of criminal/border-related cases, the backlog of criminal defendants awaiting trial as a result of the COVID-19 pandemic and the shortage of active federal judges available to handle the civil and criminal caseload.  Doc. 491 at 16.  Ms. Drevaleva's filings and e-mails to chambers force the Court to turn its already stretched resources to address her continued attempts to circumvent Court rules and directives.  *See Jaiyeola v. Garmin Int'l, Inc.*, No. 2:20-CV-02068-HLT, 2021 WL 2515023, at *14 (D. Kan. June 18, 2021) (finding interference with judicial process factor weighed in favor of imposing dismissal as a sanction where plaintiff was filing meritless motions and emailing chambers with his scheduling expectations).  *See King v. Fleming*, 899 F.3d 1140, 1150, n.15 (10th Cir. 2018) ("Greater degrees of obstruction help justify a dismissal sanction.").

Ms. Drevaleva's last barrage of documents by FedEx is yet another sign that she does not plan to let up on her abusive treatment of the judicial process, and so the Court finds that this factor also weighs in favor of the imposition of sanctions.

**III.     Culpability of Litigant**

In determining whether sanctions are appropriate, the district court should consider sanctioning the responsible party.  *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1439 (10th Cir. 1990); *see Davis v. Miller*, 571 F.3d 1058, 1062 (10th Cir. 2009)

(sanctions should be directed at counsel "when the fault lies with him rather than with his client"). Here, Ms. Drevaleva as a *pro se* litigant is, and has always been, solely responsible for prosecuting her case and the Court's cautions have always been directed at her. Thus, Plaintiff's culpability weighs in favor of sanctions imposed against her alone.

The Court's analysis of the first three factors weighs heavily in favor of imposing sanctions against Plaintiff. The Court now determines whether dismissal is appropriate. *King*, 899 F.3d at 1150, n.15 (first three factors aid court in deciding whether to apply any sanctions, and last two "inform on whether dismissal or lesser sanction is appropriate").

**IV.   Notice to Party and Appropriateness of Less Sanctions**

The last two factors the Court should consider are:

> (A) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and
>
> (B) the efficacy of lesser sanctions.

**A.   Notice**

A court must consider whether plaintiff was warned that dismissal would be a potential sanction for his or her actions. *Ehrenhaus*, 965 F.2d at 921, cited in *Valdez v. Liberty Mutual Ins. Co.*, 2020 WL 4882436, at *3 (D. Colo. Aug. 19, 2020). Under the *Ehrenhaus* factors, notice is not a prerequisite for dismissal and constructive notice of dismissal is enough to satisfy the notice prong of the *Ehrenhaus* factors. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1145–46 (10th Cir. 2007) (dismissal was appropriate where district court's warning put litigant and counsel "at least on constructive notice"); *Davis v. Miller*, 571 F.3d

1058, 1063–64 (10th Cir. 2009) (accord). It is also not necessary that the district court *promise* to dismiss the case in the event of further delay, nor is it necessary that the notice be given regarding "the specific behavior that later forms the basis of the dismissal." *Ecclesiastes 9:10-11-12, Inc.,* 497 F.3d at 1150.

There is no gray area in this case regarding the notice factor. The Court provided Ms. Drevaleva express and formal notice twice. In the First Opinion, the Court warner Plaintiff that failure to follow Court orders, rules and procedures would result in "filing restrictions **or sanctions to include dismissal of the case.**" Doc. 491 at 19 (emphasis in original). In its Second Opinion, the Court stated:

> any subsequent violation of this Order or of other Court orders and rules will result in SANCTIONS, **INCLUDING DISMISSAL OF HER CASE WITH PREJUDICE, WITHOUT FURTHER NOTICE.**

Doc. 522 at 9 (emphasis added). Moreover, even though a court is not required to give notice on the *specific behavior* that later forms the basis of the dismissal, this Court nevertheless placed Plaintiff on formal notice that filing huge numbers of documents to satisfy her portion of the JSR violated the Court's order. Yet that is exactly what Ms. Drevaleva continues to attempt to do.

The Court therefore finds that Plaintiff was sufficiently warned in advance that dismissal of the action would be a likely sanction for noncompliance.

B.   Efficacy of Lesser Sanctions

The final question is whether a lesser sanctions would deter Plaintiff from further misconduct. *See Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139

(10th Cir. 1994). The Court finds that a lesser sanction than dismissal would not curb Ms. Drevaleva's abuse of the litigation process.

Dismissal represents an extreme sanction appropriate only in cases of willful misconduct, *Ehrenhaus,* 965 F.2d at 920, and it is Plaintiff's continual willful violation of court rules and procedures that convinces the Court lesser sanctions would not be effective. There is no indication that Ms. Drevaleva did not comprehend the Court's findings and warnings set out in it Opinions; and in fact, her e-mails to chambers reflect that awareness. Moreover, Ms. Drevaleva is no stranger to court orders and warning about vexatious litigation conduct as evidenced by her record of abusive filings in the United States District Court for the Northern District of California. Clearly, Ms. Drevaleva understood the Court's denial of her request for electronic filing privileges (on which she registered her annoyance); she grasped the point of the Court's warning regarding *ex parte* communications with the Court (which she attempted to dodge by simply copying defense counsel on subsequent unofficial communications); and most recently, she responded to the Court's Second Order regarding preparation of the JSR by ignoring it—twice.

In the end, Ms. Drevaleva does exactly what she wants to do rather than what the Court requires. It is this behavior which shows that Plaintiff has no intention of changing course, regardless of any further warnings or lesser sanctions that are imposed. The Court's warning in its Second Opinion was expressed as *final,* and the dispositive consequences were unequivocal

and clear, and yet Ms. Drevaleva continues her submission of frivolous, irrelevant and non-compliant pleadings. The Court finds that this refusal to comply with court orders and to follow appropriate procedures applicable to all court litigants is INTENTIONAL and WILLFUL, and therefore finds that DISMISSAL WITH PREJUDICE is the only suitable sanction that will stem Plaintiff's abuse of the judicial process. *See Ehrenhaus*, 965 F.2d at 920 (dismissal is "appropriate only when the aggravating factors like bad faith or willfulness outweigh the judicial system's strong predisposition to resolve cases on their merits.").

**THEREFORE,**

**IT IS ORDERED** that all Plaintiff's pending claims in the instant lawsuit are hereby **DISMISSED WITH PREJUDICE** and in their entirety.

A Rule 58 Judgment shall issue separately.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE